# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **NEILL S. BASSI,** | ) |
| | ) |
| **Plaintiff/Counter-Defendant,** | ) |
| | ) |
| v. | ) |
| | )     **Civil Action No. 07-1277 (JDB)** |
| **JARROD M. PATTEN,** | ) |
| | ) |
| **Defendant,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CASEY T. PATTEN,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff.** | ) |
| | ) |
| _____ | ) |
| | ) |
| **JARROD M. PATTEN,** | ) |
| | ) |
| **Defendant/Third-Party Plaintiff,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CASEY T. PATTEN,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff/** | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **GREG DAVIS,** | ) |
| | ) |
| **Third-Party Defendant.** | ) |

### DEFENDANT/COUNTER-PLAINTIFF/THIRD-PARTY PLAINTIFF CASEY T. PATTEN AND DEFENDANT/THIRD-PARTY PLAINTIFF JARROD M. PATTEN'S JOINT SUPPLEMENTAL RULE 26(a)(2) STATEMENT

Defendant/Counter-Plaintiff/Third-Party Plaintiff Casey T. Patten and Defendant/Third-Party Plaintiff Jarrod M. Patten, through counsel, hereby supplement their Preliminary Joint Rule 26(a)(2) Statement, and designate the following individuals as testifying expert witnesses in the above captioned case:

      1.     Stephen W. Siebert, M.D., M.P.H., P.A.
               7402 York Road
               Suite 301
               Towson, MD 21204-7522

Dr. Siebert, a board-certified psychiatrist, is expected to provide expert testimony concerning, *inter alia*, the damages allegedly suffered by plaintiff as a result of the incident giving rise to this litigation, including plaintiff's alleged psychiatric injuries, future need for psychiatric/psychological care, and the amount and reasonableness of the costs related thereto. A copy of Dr. Siebert's written report is attached as Exhibit 1, along with a copy of his curriculum vitae.

      2.     Robert O. Gordon, M.D.
               106 Irving Street, N.W.
               Washington, D.C. 20010

Dr. Siebert, a board-certified orthopedic surgeon, is expected to provide expert testimony concerning, *inter alia*, the cause, extent, and permanency of the injuries and damages allegedly sustained by Plaintiff as a result of the incident giving rise to this litigation, the need for future

medical care, and the amount and reasonableness of the costs related thereto.  A copy of Dr. Gordon's written report is attached hereto as Exhibit 2, along with a copy of his curriculum vitae.

Respectfully submitted,


_____/s/  Barry Coburn_____
Barry Coburn
(D.C. Bar No. 358020)
COBURN & COFFMAN, PLLC
1244 19th Street, N.W.
Washington, D.C. 20036
Phone: (202) 657-4490
Fax:  (866) 561-9712

Attorney for Defendant/Counter-Plaintiff/Third Party-Plaintiff Casey T. Patten

_____/s/   Steven J. McCool_____
MALLON & McCOOL, LLC
1776 K Street, N.W.
Suite 200
Washington, D.C. 20006
(202)393-7088

Attorney for Defendant Jarrod M. Patten

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing on all parties in this matter has been made by ECF on this 2nd day of May 2008.


_____/s/  Barry Coburn_____

# EXHIBIT 1

STEPHEN W. SIEBERT, M.D., M.P.H., P.A.
1605 ALICEANNA STREET
BALTIMORE, MARYLAND 21231
TELEPHONE: [410] 522-1800
FACSIMILE: [410] 522-1803
EMAIL: DRSIEBERT@MAC.COM

## PSYCHIATRIC INDEPENDENT MEDICAL EVALUATION

NAME:  **NEILL STYER BASSI**  *DATE OF EVALUATION: 2/20/08*
SS#:  **XXX—XX—1336**
DOB:  **11/27/85**

RE:  *Neill Bassi v. Jarrod Patten and Casey Patten [07—1277]*

### IDENTIFYING INFORMATION

Mr. Bassi is a 22-year-old, single, white, male, Georgetown University senior who was referred for evaluation by Steven J. McCool and Mallon & McCool. Mr. Bassi understood the nature and object of the evaluation and was aware that a report of my opinions would be forwarded to Mr. McCool. The interview and evaluation was conducted with Elizabeth Zebron RN BSN. As part of this evaluation, the following records were reviewed:

*Medical Records*

> Georgetown University Sports Medicine Department, Injury and Illness Report, 1/14/07
> Georgetown University Sports Medicine Department, Physician Clinic Form, 1/15/07
> Georgetown University Sports Medicine Department, Injury Record, 1/15/07—6/16/07
> Mark D. Connell MD, 2/08/07, 2/22/07, 4/06/07, 5/01/07, and 7/13/07
> Sibley Memorial Hospital, Radiology Report, 2/14/07
> Georgetown University Student Health Center Physical Exam Form, 3/12/07
> Sibley Memorial Hospital, Operative Summary, 3/13/07
> Sibley Memorial Hospital Admission record, 3/13—3/14/07
> J. R. Rudzki MD, 3/13/07
> CORE Physical Therapy, 4/17—5/11/07
> Active Care Physical Therapy and Sports Med, 5/21—8/08/07
> Brian B. Doyle MD, 1/21—2/27/08

*Legal Records*

> Complaint and Jury Demand
> Answer and Counterclaim, 8/15/07
> Answer to Counterclaim, 9/04/07
> Third Party Complaint
> Plaintiff's Answers to Interrogatories, 11/16/07
> Susan B. Trachman MD, 11/30/07
> Defendant Jerrod M. Patten's Response to Plaintiff's Interrogatories, 12/10/07
> Mark D. Connell MD, 12/12/07
> Defendant/Counter-Plaintiff Casey M. Patten's Response to Plaintiff's Interrogatories, 12/13/07
> Plaintiff's Rule 26(a)(2) Disclosures, 12/17/07
> Deposition of Neil Bassi, 2/27/08

### NARRATIVE HISTORY - BACKGROUND

*Development*  He was born and raised in an intact family in San Francisco. He is the middle of three siblings with a younger brother and an older sister. His parents are both attorneys. He denied unusual childhood stresses or traumatic experiences. "My parents did a pretty good job raising me. We had a lot of fun and played a lot of sports."

*Education*  Mr. Bassi denies any history of learning difficulty, failure, or retention. He attended Town School for Boys for grades K—8. "My grades weren't very good. I tended to be a

RE: NEILL STYER BASSI
**PSYCHIATRIC INDEPENDENT MEDICAL EVALUATION**                    PAGE 2 OF 8

social butterfly." He attended St. Ignatius School his freshman and sophomore years and played football, water polo, and lacrosse. He then transferred to Georgetown Prep, in Bethesda MD, for his last two years. "I transferred to play lacrosse. I first picked up a lacrosse stick in the 5th or 6th grade. I was on the Town School lacrosse team in 7th and 8th grade and played varsity lacrosse at St. Ignatius High School." While in the 10th grade, he told his father he wanted to play college lacrosse. "I wanted to go to a good college, so I looked at the top 10 high school powerhouses in lacrosse. Georgetown Prep was a Jesuit school like St. Ignatius and was the best high school team in the nation. I flew out on my own and talked with the coaches. After I was accepted for admission, I flew back with my father so he could look at the school. When I came to Prep, I had to focus on playing lacrosse at a much higher level. I played a lot more than I thought I would. I loved the team, the school, and the coach. My senior year was my best year for lacrosse. I was recruited by several colleges, including Johns Hopkins University."

He graduated from Georgetown Prep in 2004 and accepted a partial scholarship to play lacrosse at Georgetown University. "Our college recruiting class was number one in the nation. I was one of 3 or 4 freshman to play that year." Mr. Bassi played short stick defensive midfield and played in 7 games.

**Social/Marital**    He is single and has no children.

**Occupations**    "I have worked at summer lacrosse camps my whole life. Otherwise, Smith Point was my first paid job. After my freshman year, I struck up a conversation with Bo Blair, who was the owner of Smith Point. He gave me his card and offered me a job. I started working as a doorman a little in the summer and steady in the fall of my sophomore year. I basically sat in a chair and collected money."[1]

**Legal**    There is no history for criminal convictions or workers' compensation claims.

**PAST MEDICAL HISTORY**

**Childhood**    No unusual health problems

**Injuries**    He fractured his left arm in pre-K; he injured his left ankle on a skateboard while in the 8th grade; during high school he was diagnosed with stress fractures in his legs related to playing sports.

During his freshman year of college, he sustained a bone bruise to his knee and could not finish the season. He recovered after a few months. He was able to play in the fall of his sophomore year. "I had a great fall season, but I was training too hard and developed a stress fracture. I was red-shirted and sat out the spring season."[2]

**Surgery**    Denied

**Chronic Illness**    He denied chronic health problems.[3] Mr. Bassi reported that he was very health conscious and watched his diet. "Before I was hurt, I would work out and train religiously. Prior to the fall of my junior year, I trained all summer and was in great shape."

**Substance Use**    He is a non-smoker. There is no history for alcohol or drug abuse.[4]

---

[1] In Mr. Bassi's deposition, he indicated that in the summer after his Freshman year of college, he also worked at 'The Rhino' on M street. He would walk around the bar and pick up glasses and sweep up at the end of the night.

[2] In his deposition, he testified that he did not formally 'red shirt'.

[3] He testified that he has high blood pressure.

[4] During his deposition, Mr. Bassi testified that he was intoxicated at the time of a 7/01/06 incident when he was a spectator at a baseball game. Mr. Bassi reported to Dr. Connell that he drinks alcohol 1—2 times per month. On 12/03/07, he reported drinking alcohol 1—2 drinks per week on a medical history form. Dr. Doyle noted, "between two times a week and twice a month he drinks 6—8 beers."

RE: NEILL STYER BASSI
**PSYCHIATRIC INDEPENDENT MEDICAL EVALUATION**          **PAGE 3 OF 8**

| | |
|---|---|
| *Psychiatric* | Mr. Bassi was diagnosed with attention deficit disorder by Dr. Verby in his freshman year of college and prescribed Focalin.[5] "I went to him after my brother was diagnosed with ADD. I take Focalin when I need to study. It has made a difference." There is no other history for mental health treatment prior to the accidental injury. Family history is otherwise negative for psychiatric disorder or substance abuse. |

**ONSET AND PROGRESSION OF THE CURRENT CONDITION**

| | |
|---|---|
| *Report of Injury* | Mr. Bassi stated that Smith Point was not usually a rowdy bar. "On 1/14/07, I was at the door with another doorman. An altercation erupted involving two brothers, Jarrod and Casey Patten. It was near closing. They wanted to come in and were told no. They were inebriated and began to get aggressive. They argued and started to yell at us. Casey punched one of the door guys. When he went to punch the guy again, he missed and hit a girl in the face. At some point, Jarrod charged me and chicken-winged my right arm. He subluxated my shoulder. It was one of the most painful things I ever experienced. Then Casey Patten went after me, but I was able to restrain him and hold him down."[6] |
| | He went inside to get the owner, Bo Blair, and returned to the scene. "Casey was still arguing." Mr. Bassi then helped to clear out the patrons at closing but was unable to help clean up the bar. He iced his shoulder down. |
| *Subsequent Medical Treatment* | He did not go to the Emergency Room, but recalls calling the trainer, Tom Disanto, who met with him on Sunday and referred him to Dr. K, the team physician, who examined him the next day. He was placed in a sling and put on an injury rehab program at Georgetown.[7] "Everyday was a struggle to get through it. It was tough for me to write with a pen. I wanted them to take some x-rays, but they said I had to finish the rehab program." |
| | Mr. Bassi decided to seek medical treatment outside of the university with a sports medicine specialist, Dr. Connell, who immediately ordered x-rays.[8] Mr. Bassi took the |

---

[5] Dexmethylphenidate

[6] In the Complaint and Jury Demand, it is alleged that Casey and Jarrod Patten became enraged and used abusive, profane, and insulting language. Mr. Bassi alleges that Jarrod M. Patten charged him and violently assaulted and battered him by grabbing his right arm and wrenching it behind his back causing severe right shoulder injuries. In the Answer and Counterclaim, the defendants denied the allegations and allege that Mr. Bassi and another doorman, Greg Davis, taunted Jarrod and Casey Patton; charged Casey Patton as he retreated; knocked him to the ground; punched him, struck him with his open hand, and kicked him causing injuries to his ribs, chest, back, and head.

[7] Georgetown University Sports Medicine Department, Injury and Illness Report, dated 1/14/07, Mr. Bassi "felt R shoulder pop out last night during work." He was diagnosed with a R shoulder subluxation. He was referred to Dr. Klimkiewicz, who noted Mr. Bassi "was trying to stop a fight at his job and felt his shoulder 'pop out'." Dr. Klimkiewicz diagnosed a shoulder posterior subluxation and prescribed Indocin bid. Dr. Connell later noted he took the medication for two days and it caused upset stomach.

[8] Mr. Bassi was evaluated by Mark D. Connell MD on 2/08/07. On 2/14/07, right shoulder arthrogram was negative for rotator cuff tear. MR arthrogram showed a greater than 180 degree tear of the labrum involving the superior, posterior, and inferior labrum.

[9] In Plaintiff's Answers to Interrogatories, Mr. Bassi indicated that on 2/15/07, he attempted to participate in a work out with members of the Georgetown Lacrosse Team. He had to stop playing after a few minutes.

[10] On 3/13/07, he underwent a right shoulder arthroscopic superior labrum anterior posterior (SLAP) repair; right shoulder posterior capsulolabral reconstruction; arthroscopic loose body removal of free chondral fragments at Sibley Memorial Hospital. Dr. Rudzki noted he was admitted for observation later that night due to nausea.

[11] Dr. Connell noted on 4/06/07 that Mr. Bassi was "doing well with no problems or complaints." He was recommended for early phase rehabilitation. On 5/01/07, he was again "doing well with no problems or complaints with near complete range of motion lacking terminal degrees in all planes." On 7/13/07, he had some anterior pain in the biceps and AC joint area. Physical exam showed limited internal and external rotation by about 5 degrees and no instability.

films back to Georgetown and was told that it was a minor labrum tear. He tried to play lacrosse and could not play more than 20 minutes.[9] He returned to Dr. Connell and was told that he had a 180-degree tear that warranted surgery.

On 3/13/07, he underwent shoulder surgery.[10] "They went in and found it was worse than they had expected." Following his surgery, his mother came to Washington to take care of him postoperatively. He attended Core Physical Therapy in Washington DC. His range of motion slowly improved. "It was excruciating pain." He returned to San Francisco for the summer and continued physical therapy at Active Care. He was assessed to have reached MMI and was seen by Dr. Connell in follow-up.[11]

In the fall of 2007, he began training with the team again. "I started at ground zero. Every day, I would work out with the team. I was back out in the field but had no contact. Just running would cause the muscles to tighten in my shoulder up into my neck. My shoulder would be aching."

After Christmas break, when he returned to the area, he could barely move his arm. He was prescribed anti-inflammatory medication and physical therapy. He reported that he has had two episodes where he was unable to move his arm.

**Mental Health Evaluation and Treatment**

Mr. Bassi recalled having disturbing dreams and nightmares related to his injury, especially around the time of his surgery. "The injury caused me a lot of pain physically and mentally. It changed the way I looked at myself. I gave up sports and gave up my whole way of life. I had to deal with this shoulder making me feel like I am fifty years old. Over the summer, I was getting very emotional, tearing up over commercials, and edgy." He started paying less attention to his grooming and let his beard grow. He was not showering every day. "My family urged me to go see someone."

In 11/07, the team began playing scrimmages. "I could tell I would be unable to play my position as defensive midfielder. Mentally and physically, I would not be able to reach out my arm to block or to hit. I did not want to be someone who wasn't pushing the boat. It wasn't fair to the team. It was depressing for me to watch the team play. "I decided I needed to try and move on with my life. Sports were important to me and lacrosse had been my coping skill." After discussions with his family, he resigned from the team in 12/07 and gave up his scholarship.

In 1/08, Mr. Bassi came under the care of psychiatrist, Dr. Brian Doyle. He was recommended for medication but declined. He sees Dr. Doyle for one-hour, weekly, psychotherapy sessions on Fridays that he finds very helpful. "Dr. Doyle allows me to get things off my chest. He allows me to talk about how this has affected me and the people around me, and how it changes the way I look at people and how they perceive me. I feel better after I see him. On Friday night, I feel like a weight is off my shoulders for the weekend."

**Medications**　　　　Daypro; Focalin, as needed.

**REVIEW OF RECORDS**

3/12/07　　　Georgetown University Student Health Center Physical Exam Form noted that a psychiatric examination was normal.

11/16/07　　　Plaintiff's Answers to Interrogatories allege that Mr. Bassi suffered psychological injuries as a result of the attack on him and psychological injuries as a result of the injury's impact on his collegiate athletic career.

11/30/07　　　Susan B. Trachman MD completed a psychiatric evaluation. At the time of this evaluation, he was attending lacrosse practices, working out, and was lifting weights with the team. He appeared for his evaluation in a lacrosse sweat suit. His mood was slightly anxious and his affect was appropriate. He cried openly when talking about how much he feels that he's lost as a result of the assault. Mr. Bassi stated he "hates what they did to me," regrets that his mother had to take care of him, and was

mournful over the fact that everything he worked for...will likely never be achievable..." He reported insomnia, decreased appetite with 10—15lb weight loss, decreased energy, anhedonia, and a labile mood with unprovoked crying spells. He avoided going to Georgetown and "feels anxious and sick to his stomach" when he sees the owner on the street. He reported intrusive thoughts about the assault and that he was hypervigilant. He reported no past psychiatric history. Diagnostic impression was depression, single episode; symptoms of posttraumatic stress disorder; hypertension; severe psychosocial stressors; and GAF 70. Dr. Trachman recommended 6—12 months of treatment with an antidepressant and weekly psychotherapy, with estimated costs in the range of $10—12,000.

| | |
|---|---|
| 1/21/08 | Brian B. Doyle MD evaluated Mr. Bassi and noted, "he can't recover emotionally; he feels off balance, easily in tears, out of control of himself, and suspicious of others...At times, he is sad, listless, and teary...He find himself generally anxious. For days, he doesn't shower or shave, at times struggling to get out of bed. He ruminates about the injury, enraged at the man who wrenched his shoulder and caused his disability. Some weeks ago, his primary care doctor prescribed Xanax 0.5mg to help with sleep, which he never tried. As a freshman, he was diagnosed with attention deficit hyperactivity disorder. He occasionally takes 10mg of Focalin to help him study. In the last semester, he made the Dean's List for the first time." His mood was somber and tense; at times he was in tears. Diagnostic impression was mood disorder with depressive features 293.83 and generalized anxiety disorder due to shoulder trauma 293.84; attention deficit disorder NOS 314.90; r/o pain disorder associated with both psychological features and shoulder trauma 307.80; alcohol abuse 305.00; major depression 296.22; posttraumatic stress disorder 309.81. GAF was 65. It was noted that Mr. Bassi was reluctant to take other medication but may need to if he does not improve with individual psychotherapy. |
| 2/15/08 | Diagnostic formulation was depressive disorder secondary to physical injury and PTSD, delayed onset, chronic 309.81. |
| 2/22/08 | On a self-report depression inventory (HAM-D), Mr. Bassi scored 29. |

## FUNCTIONAL CAPACITY AND REPORTED IMPAIRMENTS[12]

| | | |
|---|---|---|
| | Sleep | "I have trouble sleeping at night. Some nights are easier to sleep than others. I stay up thinking about shit." He has difficulty falling asleep secondary to anxious worrying. Once asleep, he remains asleep. He intermittently has pain upon awakening. He does not report any current dreams or nightmares. |
| | Self-care | He is currently independent with self-care and personal hygiene. He now showers every day. "I am trying to make more of an effort." |
| | Meals/home maintenance | His eating habits have changed; he makes less healthy food choices. "I don't think about eating the way I used to. He lives off campus with five other guys, one of whom plays lacrosse. They are on different schedules. |
| | | He has some difficulty with routine tasks. "Little things come into play. I reach up to pull a jug of milk and pulling it off the shelf is difficult. Carrying trash can be difficult. I have to be careful with the angles of how I lift and pull things." There is no reported impairment with routine household maintenance activities. |
| | Physical Activity | He is trying to exercise more by lifting weights a little bit. He played basketball for the first time last week. "I was awful. I went from court one to court three." He is starting to play squash but has to stop after 45 minutes. "I am trying to train myself to be left handed." |

[12] Using the 4th and 5th edition of the AMA Guides to the Evaluation of Permanent Impairment, mental impairment may be assigned, if as the result of a mental disorder, an individual has permanent impairment in usual activities of daily living, social relations, task completion, or the likelihood for deterioration in a work or work-like setting.

RE: NEILL STYER BASSI
**PSYCHIATRIC INDEPENDENT MEDICAL EVALUATION**                 **PAGE 6 OF 8**

| | | |
|---|---|---|
| | Recreational | He has given up skiing, rock climbing, and serious weight lifting. "I have a lot of fear as well. I am afraid of getting hurt again." He plays a lot of video games. "It is competitive. It is something I can do, and do a lot of, and it doesn't bother me." He has a Halo 3 and an X-Box 360. |
| | Travel | He is planning a trip to the Caribbean with his girlfriend over spring break. |
| | Sexual Function | He denied problems with his libido or functioning in the context of his current relationship. "It is OK. My injury changed the way I view myself. I feel less attractive." His girlfriend, Katie, has been very supportive and their relationship is stable. Valentine's Day with his girlfriend was very emotional. "She was talking about the events of the past year and about how she was hurt." |

| | | |
|---|---|---|
| Social functioning | Communication | He was unable to write following his surgery. He has a cellular telephone and is computer literate. |
| | Family | "I was able to see how much my parents care about my well-being. They were so attentive. This has made me stronger but it was very tough when my mom had to take care of me. My mom stayed with me for a week and a half in a hotel after the surgery." <br><br> Both his siblings live in San Francisco. His brother, age 20, works at 24-hour Fitness. He also attended Georgetown Prep. His sister, age 24, also works in San Francisco. He reported stable relationships with his parents and siblings. "We were always a very close family and we continue to be close." |
| | Friends | There is no report of altercations. Friends have noticed that he is more argumentative and angry. He is less social and goes out less. He thinks people see him differently. "I do not horseplay with my buddies anymore." |
| | General Public | He is more cautious in public due to a fear of injuring his arm. He is more suspicious and watchful of people. He has not been in any confrontations. "I am non-confrontational, generally." |

| | | |
|---|---|---|
| Task Completion | Attention | He has been diagnosed with attentional problems, however there is no current impairment with the ability to sustain focused attention in order to timely complete tasks commonly found in activities of daily living or school settings. |
| | Cognition | There is no reported impairment of concentration or memory. |
| | Driving | There is no impairment with driving. He has not received any tickets or been involved in motor vehicle accidents. He reported that driving can exacerbate his shoulder pain, especially when turning the wheel. |

| | | |
|---|---|---|
| Deterioration in work settings | Attempts to Return to Work | Mr. Bassi did not return to work at Smith Point and he is not currently working in any capacity. He did work over this past summer as an unpaid intern in the public defender's office in San Francisco. |
| | Work Performance | He is a government major at Georgetown and maintains a 'B' average. He expects to graduate in 5/08. |
| | Vocational Plans | He was not referred for vocational rehabilitation. Following graduation, he is considering a job with a real estate developer. He eventually plans to go to graduate school but wants to take time off from school in order to gain work experience. |

**PSYCHIATRIC EXAMINATION (PRESENT MENTAL STATUS)**

*Appearance and General Behavior:* Mr. Bassi arrived on time and was unaccompanied. He drove himself to the appointment. He was neatly groomed and neatly dressed. His height is 6'—0" and weight is 185lbs. He was cooperative and had a positive attitude toward the evaluation. At one point, he became quietly tearful discussing the impact of his injury on his mother. There was no evidence for unusual behavior or mannerism during the interview or examination.

*Speech:* He spoke freely and in a normal conversational manner. There was no evidence for dysarthria, dysphasia, or formal thinking disorder.

*Cognition:* He was alert, fully oriented, and able to sustain attention throughout the interview and examination. There was no evidence for any significant defect in concentration, short-term, or remote memory. Intelligence was estimated to be above average.

*Mood and Affect:* He was euthymic and had a normal range of affect. Mood was self-reported as "Good for the most part, but it still wells up. I get hyper-emotional. I can put on a good front when I need to. I think that after leaving here, I am not going to be in a good mood. My low point is usually when I have to talk about it." He reports personality changes since the incident and described himself as more introverted and quieter. "For the most part, I'm somber. I miss being me again and running around." There was no report or evidence for severe depression, hopelessness, or suicidal ideation.

*Content of Thought:* There was no evidence for unusual preoccupation, obsessions, or delusional thinking. "This past year was very stressful and upsetting. Lacrosse at Georgetown was the highlight of my life. This is not the way I wanted to leave Georgetown. This changed my life more than any other event. It has been so unfair." He is avoidant of certain places. "You could not pay me to walk in that bar, Dr. Connell's office, the hospital, or the hotel where I stayed with my mom after my surgery."

*Perceptual:* There was no evidence for hypervigilance or an exaggerated startle response. There was no evidence for dissociation or hallucinations in any modality.

**PSYCHIATRIC DIAGNOSIS [DSM-IV]**

| | |
|---|---|
| *AXIS I:* | Adjustment disorder with mixed anxiety and depressed mood 309.28 |
| | R/O attention deficit hyperactivity disorder 314.90 |
| *AXIS II:* | No diagnosis V71.09 |
| *AXIS III:* | S/P arthroscopic right shoulder surgery |
| *AXIS IV:* | Resignation from lacrosse team |
| *AXIS V:* | 75 |

**SUMMARY AND OPINIONS[13]**

1. Mr. Bassi provided the above narrative history, which overall was consistent with the medical records. My opinion is that he presented as a credible informant and there is no evidence that he was consciously exaggerating current symptoms or impairment.

2. With reference to preexisting diagnoses, Mr. Bassi has apparently been diagnosed with ADHD and has been prescribed Focalin, which he has intermittently taken throughout college. He did not report this history to Dr. Trachman. My opinion is that he does not report a history consistent with childhood attentional problems and it is unclear if he met formal diagnostic criteria for the disorder. It is possible that he was using Focalin as an occasional stimulant and as a study aid. This can be resolved by reviewing the evaluation and prescription records of Dr. Verby.

3. With regard to his current diagnoses, my opinion is that Mr. Bassi reports subjective distress with minimal objective evidence for impairment of functioning due to any mental disorder. Some of his symptoms are consistent with a grief reaction, such as the experience of welling up with emotion. By definition, an expectable emotional response to an event is not a mental disorder. Mr. Bassi was noted to have a normal psychiatric examination in 3/07 prior to his surgery, and he reports the onset of symptoms over the summer of 2007. My opinion is that he is most likely experiencing a situational adjustment disorder related to his decision to resign from the lacrosse team. It is not indicated in the medical records that his injury precluded him from playing lacrosse.

---

[13] I have reached these conclusions with reasonable medical certainty. The opinions in this report are based on clinical assessment, examination, and documentation and rendered with a reasonable degree of medical certainty.

RE: NEILL STYER BASSI
PSYCHIATRIC INDEPENDENT MEDICAL EVALUATION                                 PAGE 8 OF 8

4. Mr. Bassi does not meet criteria for posttraumatic stress disorder. This is based on the following:

   a) The incident itself does not meet severity criteria for PTSD. An escalating verbal and physical altercation between several employees and two customers at a bar during closing time does not meet usual definition for an extreme psychologically traumatic stressor.

   b) Further, Mr. Bassi does not describe experiencing intense fear, helplessness, or horror at the time of his injury. Following his alleged shoulder injury, he continued to function in an expected manner. He continued to intervene in the altercation by taking Casey Patten to the ground and restraining him. He located his boss and returned to the scene. He then assisted in clearing patrons from the building after closing. He was unable to move tables due to pain in his shoulder, not as the result of psychological distress.

   c) My opinion is that Mr. Bassi does not have any objective evidence for DSM-IV criteria B1—B5. There is no report or evidence for recurrent or intrusive distressing recollections of the event. He reported that he does not like to be reminded of the incident. There is no evidence for recurrent dreams of the event. He reported having no dreams since his 3/13/07 surgery. There is no report or evidence for dissociative flashbacks. There is no report or evidence for physiological reactivity.

   d) My opinion is that he does not have objective evidence for three or more for DSM-IV criteria C1—C2. There is no evidence for numbing of general responsiveness. He had no difficulty discussing the incident. He reports avoiding going to Smith Point, although he has been there when necessary. There is no evidence for inability to recall important details of the incident. There is no evidence for markedly diminished interest in significant activities. He reports being less social but does not described feelings of detachment or estrangement. He did not manifest a restricted range of affect. There was no evidence for a feeling of a foreshortened future.

   e) With regard to symptoms of arousal D1—D5, he reports insomnia. He reports that his friends see him as more argumentative but he did not report outbursts of anger. There is no evidence for problems with concentration, hypervigilance, or an exaggerated startle response.

5. With regard to treatment, it is reasonable for Mr. Bassi to have short-term, individual, psychotherapy with a therapist who has experience treating adjustment disorders and grief reactions. A reasonable course of treatment would be 10—12 one-hour sessions of psychotherapy, representing an estimated maximum treatment expense of $1,500.

6. His prognosis is excellent for a full recovery over time, with or without treatment.

7. Mr. Bassi does not have evidence for ratable permanent mental or behavioral impairment as a result of the altercation on 1/14/07.

*[signature]*

Stephen W. Siebert, M.D., M.P.H.
*Diplomate in the Specialty of Psychiatry, American Board of Psychiatry and Neurology*
*Diplomate in the Subspecialty of Forensic Psychiatry, American Board of Psychiatry and Neurology*
*Certified Independent Medical Examiner, American Board of Independent Medical Examiners*

STEPHEN W. SIEBERT, M.D., M.P.H., P.A.
1605 ALICEANNA STREET
BALTIMORE, MARYLAND 21231

TELEPHONE: [410] 522-1800
FACSIMILE: [410] 522-1803
EMAIL: DRSIEBERT@MAC.COM

May 2, 2008

Jeffrey Coffman
Coburn & Coffman PLLC
1244 19th Street, N.W.
Washington D.C. 20036

Dear Mr. Coffman:

The following is a compilation of the past four years of depositions and courtroom testimonies related to my forensic psychiatry practice. From 2004 to July 1, 2007, I charged an hourly rate of $400. Effective July 1, 2007, I increased my hourly rate to $450.

Sincerely,

Stephen W. Siebert, M.D., M.P.H.
*Diplomate in the Specialty of Psychiatry, American Board of Psychiatry and Neurology*
*Diplomate in the Subspecialty of Forensic Psychiatry, American Board of Psychiatry and Neurology*
*Certified Independent Medical Examiner, American Board of Independent Medical Examiners*

# FORENSIC LOG - EXPERT MEDICAL TESTIMONY
## Stephen W. Siebert, M.D.

| DATE | NAME | JURISDICTION | CASE NO. | ISSUE | RETAINED | TYPE |
|---|---|---|---|---|---|---|
| **2004** | | | | | | |
| 2/26/04 | Dickens | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |
| 3/1/04 | Pilkerton | Howard County | | WCC | Def. Atty | Deposition |
| 4/9/04 | Bryant, L. | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |
| 4/20/04 | Bailey-Johnston, D | District of Columbia | | WCC | Def. Atty | Deposition |
| 4/30/04 | Williams, D. | Baltimore City | 02-387A | Lead Toxicity | Plt. Atty | Deposition |
| 5/18/04 | Disney | Anne Arundel County | | Medical Malpractice | Plt. Atty | Deposition |
| 7/1/04 | Tyler, C. | Frederick County | 02-1329 | WCC | Def. Atty | Deposition |
| 7/20/04 | Brooke, J. | Baltimore County | 24-C-03-004583 | WCC | Def. Atty | Deposition |
| 7/7/04 | Brown, J. | Baltimore County | 03-C-03-010157 | Sexual Assault | Plt. Atty | Deposition |
| 8/13/04 | Shives, K. | Baltimore County | | Injury | Plt. Atty | Deposition |
| 9/10/04 | Flint, R. | Garrett County | 2204 Criminal Trials | Sentence Reduction | Def. Atty | Testimony |
| 9/10/04 | Miller, M. | Harford County | 564293 | WCC | Def. Atty | Video Deposition |
| 10/8/04 | Cohen, M. | Baltimore City | | WCC | Def. Atty | Video Deposition |
| 10/14/04 | Robinson, D. | U.S. District Court D.C. | 1-04CV00647 | Medical Malpractice | Plt. Atty | Deposition |
| 11/11/04 | Wenzel, B | Baltimore County | | Wrongful Termination | Plt. Atty | Deposition |
| 12/15/04 | Knight-Bey, K | Montgomery County | 249404-V | Sexual Assault | Plt. Atty | Testimony |
| 12/15/04 | Wagner, J. | | M013977301 | Lead Toxicity | Plt. Atty | Video Deposition |
| 12/29/04 | | | | WCC | Def. Atty | Video Deposition |
| **2005** | | | | | | |
| 2/2/05 | Cohen, M. | Baltimore City | 24-C-04-006110 | Medical Malpractice | Def. Atty | Testimony |
| 2/4/05 | Randall, D. | Baltimore City | | WCC | Def. Atty | Deposition |
| 2/7/05 | Wade, L. | Baltimore City | 56500279 | Medical Malpractice | Plt. Atty | Deposition |
| 3/2/05 | Sollod, D. | Baltimore City | | Medical Malpractice | Def. Atty | Deposition |
| 3/11/05 | Tillman | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |
| 3/17/05 | Wade, L. | Baltimore City | | Medical Malpractice | Plt. Atty | Testimony |
| 4/27/05 | Hoffman, J. | Baltimore County | CBA-04-122 | Medical Malpractice | Plt. Atty | Deposition |
| 4/28/05 | Mooney-Brehm, D. | Baltimore County | | Disability Benefit | Plt. Atty | Deposition |
| 5/10/05 | Evans, T. | Baltimore City | B-508969 | WCC | Def. Atty | Deposition |
| 5/11/05 | Brunson, V. | Baltimore City | B-540637 | WCC | Def. Atty | Video Deposition |
| 5/19/05 | Means, Maurice | Baltimore City | 24-C-02-001314 | Lead Toxicity | Plt. Atty | Video Deposition |
| 6/3/05 | Holloway | Baltimore City | | Medical Malpractice | Plt. Atty | Deposition |
| 8/1/05 | Reinhardt, A. | Baltimore City | | Medical Malpractice | Plt. Atty | Deposition |
| 8/24/05 | Stringfellow, G. | Anne Arundel County | | Medical Malpractice | Plt. Atty | Deposition |
| 9/12/05 | Rolles, D. | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |
| 12/19/05 | Robinson, T. | Baltimore City | 24-C-01-003606 | Lead Toxicity | Plt. Atty | Deposition |
| **2006** | | | | | | |
| 1/18/06 | Thomas, C. | Baltimore City | 20600003 | WCC | Def. Atty | Video Deposition |
| 2/13/06 | Anderson, E. | Baltimore City | 24-C-04-3787 | WCC | Def. Atty | Video Deposition |
| 2/17/06 | Frascketti, M. | Baltimore City | | Medical Malpractice | Plt. Atty | Deposition |
| 3/24/06 | Mayo, K. | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |
| 4/18/06 | Parault, D. | Baltimore County | | Lead Toxicity | Plt. Atty | Testimony |
| 5/17/06 | Hall/McDowell | Baltimore City | 24-C-04-002938 | Lead Toxicity | Plt. Atty | Deposition |
| 5/22/06 | McNeil, G. | Baltimore City | 6096911 | WCC | Def. Atty | Video Deposition |
| 5/31/06 | Dubs | Harford County | | Sexual Assault | Victim | Testimony |
| 6/2/06 | Slutkin, J. | Baltimore City | | Victim | Plt. Atty | Testimony |
| 6/16/06 | Fisher, L. | Baltimore City | | Traumatic Brain Injury | Plt. Atty | Testimony |
| 6/19/06 | Messerschmidt, A. | Baltimore City | | WCC | Def. Atty | Video Deposition |
| 6/21/06 | Maldonado, G. | Baltimore City | 752C41020 | WCC | Def. Atty | Video Deposition |

FORENSIC LOG - EXPERT MEDICAL TESTIMONY
Stephen W. Siebert, M.D.

| DATE | NAME | JURISDICTION | CASE NO. | ISSUE | RETAINED | TYPE |
|------|------|--------------|----------|-------|----------|------|
| 7/14/06 | Lawson, R | Baltimore City | 24-C-03-007978 | Lead Toxicity | Def. Atty | Deposition |
| 9/7/06 | Beall, G. | Baltimore City | B-518896 | WCC | SIF | Video Deposition |
| 9/21/06 | Simms, J | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |
| 10/13/06 | Burgee, R | Baltimore City | 01020T060973 | WCC | | Deposition |
| 10/30/06 | Darnell, A | Baltimore City | 24-C-04-004829 | Medical Malpractice | Plt. Atty | Deposition |
| 11/3/06 | Darnell, A. | Baltimore City | 24-C-04-004829 | Medical Malpractice | Plt. Atty | Deposition |
| 11/29/06 | Frasca-Stancliff, D | Baltimore City | 24-C-04-004829 | Medical Malpractice | Plt. Atty | Deposition |
| **2007** | | | | | | |
| 1/16/07 | Elguezabal, T | Baltimore City | | Medical Malpractice | Plt. Atty | Video Deposition |
| 1/22/07 | Spear, N. | | | | | Deposition |
| 2/21/07 | Blackwell, J | Baltimore City | 24-C-04-004829 | Mercury Toxicity | Plt. Atty | Testimony |
| 2/27/07 | Davis, J | Baltimore City | | Lead Toxicity | Def. Atty | Deposition |
| 3/5/07 | Ottinger | Delaware | 04C-06-081 | Arsenic Toxicity | Plt. Atty | Deposition |
| 3/15/07 | Aboekuto | Baltimore County | 03-CR-2127 | Sentencing | Public Defender's Office | Deposition |
| 3/21/07 | Ottinger | Delaware | 04C-06-081 | Arsenic Toxicity | Plt. Atty | Deposition |
| 3/22/07 | Blackwell, J | Baltimore City | 24-C-04-004829 | Mercury Toxicity | Plt. Atty | Deposition |
| 7/2/07 | Cunningham, S | Baltimore City | 24-C-05-010842 LP | Lead Toxicity | Plt. Atty | Deposition |
| 7/9/07 | Shotwell, D. | Baltimore City | | WCC | | Deposition |
| 7/16/07 | Swedo, A. | Baltimore City | 24-C-06-006711 | WCC | Def. Atty | Deposition |
| 7/23/07 | Forstler, K | | | WCC | Def. Atty | Deposition |
| 7/23/07 | Getty, K. | | | WCC | Def. Atty | Video Deposition |
| 7/26/07 | McGinnis, S. | Baltimore City | 24-C-05-011482 | WCC | Def. Atty | Video Deposition |
| 8/28/08 | Blackwell, JJ | Baltimore City | 24-C-04-004829 | Mercury Toxicity | Plt. Atty | Testimony |
| 9/10/07 | Robinson, D | U.S. District Court D.C. | 1:04CV00647 | Wrongful Termination | Plt. Atty | Deposition |
| 10/11/07 | Ward, R | Baltimore City | | WCC | Def. Atty | Video Deposition |
| 11/8/07 | Hammer, C. | Howard County | 13-C-07-68249 | WCC | Def. Atty | Video Deposition |
| 11/12/07 | Porter, I. | Baltimore City | 24-C-06-02683 | Lead Toxicity | Def. Atty | Deposition |
| 11/30/07 | Sanchez, E | Baltimore City | | WCC | Def. Atty | Video Deposition |
| **2008** | | | | | | |
| 1/28/08 | Hargrove, W | Baltimore City | | Lead Toxicity | Def. Atty | Deposition |
| 1/30/08 | Mooney-Brehm, D | Baltimore County | CBA-06-039 | Disability Retirement | Baltimore County | Testimony |
| 4/6/08 | Butler, W | EEOC | 120-2005-00452X | Retaliation | Plt. Atty | Testimony |
| 4/14/08 | Vincent, J. | Baltimore City | | Lead Toxicity | Plt. Atty | Deposition |

# EXHIBIT 2

Robert O. Gordon, M.D.

| | | |
|---|---|---|
| GEORGETOWN MEDICAL CENTER<br>DEPT. OF ORTHOPEDIC SURGERY<br>PASQUERILLA HEALTH CENTER-GROUND FLOOR<br>3800 RESERVOIR ROAD, N.W.<br>WASHINGTON, D.C. 20007-2197<br><br>5530 WISCONSIN AVENUE<br>CHEVY CHASE, MD 20815 | PRACTICE LIMITED TO ORTHOPAEDIC SURGERY<br><br>MAILING ADDRESS<br>P.O. BOX 899<br>ARNOLD, MD 21012<br>(301) 229-8001<br>FAX (410) 757-8072 | WASHINGTON HOSPITAL CENTER<br>PHYSICIANS OFFICE BLDG. NORTH TOWER<br>106 IRVING ST. N.W. #3000<br>WASHINGTON, D.C. 20010<br><br>6845 ELM STREET, #603<br>McLEAN, VA 22101 |

March 25, 2008

**PATIENT NAME:** Neill Bassi          **DOB:** 11/27/1985   **DOI:** 01/14/2007

**PRESENT ILLNESS:**          This 22-year-old man said that he was working at a bar and someone grabbed his right arm and pulled it behind his back. He said this injured his right shoulder. He said at the time he was a student at Georgetown University, which he still is, and he was on the lacrosse team so he went the next day to a trainer and later saw Dr. Klimkiewicz, the orthopedist at Georgetown who treats the teams. He said later he went to another orthopedic surgeon, Dr. Connell and had some x-rays and an MRI scan and had an arthroscopy performed of his shoulder and he was told that he had a torn labrum. The patient said his shoulder is better since the procedure was performed, but it still does bother him with certain activities. He says if he works out too long or too much, his shoulder will bother him. He says that if he does a certain type or certain amount of activity one day, he may then not do any other type of physical activity on that same day because of his shoulder. He denies any previous history of right shoulder problems. He denies any subsequent injuries.

He said he last saw Dr. Connell about two months ago because he felt more stiffness and soreness than usual after he got back from his Christmas break and he did not know if it was because he came back here where it was much colder or exactly what had occurred. He said Dr. Connell gave him some anti-inflammatory medication called Daypro, which he said did improve his symptoms. He denies any subsequent injuries.

**PHYSICAL EXAMINATION:**          He has well-healed arthroscopy scars. He complains of some tenderness anterolaterally. He has no symptoms with rotation with his elbow next to his body and his hands in front of him, but he says it does bother him with full forward flexion and abduction. He says it feels tight when he extends 40 degrees and he cannot get his right hand up as high behind his back as he can on the left. Adduction is also full and equal to the other side, but he says that it is uncomfortable.

**IMPRESSION:**          History of right shoulder arthroscopy.

**RECOMMENDATIONS:**          This patient sustained a labral injury on 01/14/2007. I reviewed extensive medical records and also comments by Dr. Connell, indicating that he thinks that the patient's mechanism of injury as described by the patient is reasonable and although it certainly could be a reasonable explanation for the type of injury that did occur, there were are obviously other mechanisms of injury that could have caused this to have occurred as well. I believe that the treatment that was rendered was quite appropriate and Dr. Connell's notes regarding the pathology noted at the time of the procedure are consistent with the Polaroid photographs that were taken at that time. I have reviewed a report from Dr. Connell written apparently to the patient's attorney, at which time he said that he continues to have slight loss of motion and internal

Robert O. Gordon, M.D.

GEORGETOWN MEDICAL CENTER
DEPT. OF ORTHOPEDIC SURGERY
PASQUERILLA HEALTH CENTER-GROUND FLOOR
3800 RESERVOIR ROAD, N.W.
WASHINGTON, D.C. 20007-2197

5530 WISCONSIN AVENUE
CHEVY CHASE, MD 20815

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

MAILING ADDRESS
P.O. BOX 899
ARNOLD, MD 21012
(301) 229-8001
FAX (410) 757-8072

WASHINGTON HOSPITAL CENTER
PHYSICIANS OFFICE BLDG. NORTH TOWER
106 IRVING ST. N.W. #3000
WASHINGTON, D.C. 20010

6845 ELM STREET, #603
McLEAN, VA 22101

**BASSI, NEILL**　　　　(continued)　　　　　　　　　**03/25/2008**

rotation in comparison to the opposite side, but otherwise full range of motion was noted and that he had excellent muscle strength. He felt that he would make a full recovery, although he said that because he had a significant labral tear that further problems in the future could occur, but it was too soon to indicate that for certain. One of the most interesting things I should mention is that when reviewing the medical records, I note that the surgical procedure that was performed took two hours and fourteen minutes and the bill rendered appears to have been $12,615.00, which in my opinion, is approximately seven times average or reasonable reimbursement for a procedure of this type.

All of the above opinions are based on my examination of the patient and my review of the extensive medical records and radiographic reports that have been provided. If any further medical records or tests do become available, I would be happy to review them and add an addendum to this report with any modifications that might be indicated.

ROG:mdi.vjc

## ROBERT O. GORDON, M.D.

| | |
|---|---|
| **MARITAL STATUS:** | Married: Antonia Gragia, 1966 |
| **CHILDREN:** | Kimberly, Hayley |
| **EDUCATION:** | Harvard College B.A. 1965<br>Yale University College of Medicine, M.D. 1969 |
| **INTERNSHIP:** | Surgical Internship, Stanford University Medical Center, 1969-1970 |
| **RESIDENCY:** | Orthopedic Surgery, Stanford University Medical Center, 1972-1975 |
| **BOARD CERTIFICATION:** | American Board of Orthopedic Surgery, 1976 |
| **ACADEMIC APPOINTMENTS:** | Instructor in Chemistry, New Haven College, New Haven, CT, 1967 |
| | Instructor in Chemistry, Yale University Summer Institute, New Haven, CT 1967 (NSF Grant) |
| | Senior Assistant Surgeon, USPHS National Institutes of Health, Bethesda, MD 1970-1971 |
| | Surgeon, USPHS National Institutes of Health, Bethesda, MD 1971-1972 |
| | Clinical Professor of Orthopedic Surgery, Georgetown University Medical Center |

| AWARDS: | B.A. Magna cum Laude, Harvard College, 1965 |
| --- | --- |
| | Charles E. Perkins Memorial Scholarship Award, Harvard College, 1962-1965 |
| | American Society for Pharmacology and Experimental Therapeutics Medical Research, Award in Pharmacology, 1969 |
| FELLOWSHIPS: | United States Public Health Service Summer Fellowship, 1966-1967 |
| | Ford Foundation Summer Fellowship, 1968 |
| | Fellow American Academy of Orthopedic Surgery, 1978- Present |

PROFESSIONAL ORGANIZATIONS:

Member, D.C. Medical Society

Member of Washington Orthopedic Society

Fellow, American Academy of Orthopedic Surgeons

| LICENSURE: | District of Columbia, Virginia, and Maryland – 1970 – Present |
| --- | --- |

PUBLICATIONS:

1) Gordon, R.O.: Lilliputian Dynamics-The physics of extreme size change. Amer. Math. Monthly. 69:696, 1961.

2) Moriarty, J.L., Gordon, R.O., and Humphreys, J.E.: Some new intermetallic compounds of holmium and erbium and Ag, Au, Pt, Al, In, Tl, and Ge. Acta Cryst, 19:285, 1965.

3) Schopf, J.W., Barghoorn, B.S., Maser, M.D., and Gordon, R.O.: Electron microscopy of fossil bacteria two billion years old. Science. 149:3690, 1965.

4) Moriarty, J.L., Humphreys, J.E., Gordon, R.O., and Baenziger, N.C.: X-ray examination of some rare-earth-containing binary allow systems. Acta Cryst. 21:840, 1966.

5) Gordon, R.O., Wade, M.E., and Mitchell, M.S.: Suppression of agglutinins and production of tolerance to human O, Rh+, RBC in the rat with cytosine arabinoside (Abst.). Clin. Research. 16:545, 1968.

6) McKegney, F.P., Gordon, R.O., and Levine, S.M.: Ulcerative colitis and Crohn's disease compared (Abst.). Scientific Proc. Of the Amer. Psychiatric Assn. May, 1969.

7) Gordon, R.O., and Mitchell, M.S., and Wade. M.E.: Suppression of agglutinins and production of tolerance to human O, Rh+, RBC in the rat with cytosine arabinoside or cyclophosphamide (Abst.). Proc. of the Society for Gynecological Investigation. 16:51, 1969.

8) Gordon, R.O., Wade, M.E., and Mitchell, M.S.: The production of tolerance to human RBC in the rat with cytosine arabinoside or cyclophosphamide (Abst.). Clin. Research. 17:353, 1969.

9) McKegney, F.P., Gordon, R.O., and Levine, S.M.: Ulcerative colitis and Crohn's disease (Abst.). Psychiatric Spectator. Vol. 5, No. 12, p. 16, 1969.

10) Gordon, R.O., Wade, M.E., and Mitchell, N.S.: The production of tolerance to human erythrocytes in the rat with cytosine arabinsodle and cyclophosphamide. J. of Immunology. 103:233, 1969.

11) Wade, M.E., Santanelli, J.S., and Gordon, R.O.: Tolerance to human erythrocytes in already sensitized rats (Abst.). Proc. of the Soc. For Gynec. Investigation. 17:83, 1969.

12) Wade, M.E., Gordon, R.O., and Mitchell, M.S.: Chemical suppression of primary and anamnestic maternal immunization in Rh incompatible pregnancies: An animal model. American J. of Obst. And Gynec. 106:286, 1970.

13) McKegney, F.P., Gordon, R.O., and Levine, S.M.: Psychological characteristics of patients with ulcerative colitis and Crohn's disease. Psychosomatic Medicine. 32:153, 1970.

14) Wade, M.E., Gordon, R.O., and Mitchell, M.S.: Immunosuppression and tolerance to human O, Rh+, erythrocytes. International J. of Gynec. And Obst. 8:24, 1970.

15) Pincus, J.H., and Gordon, R.O.: A microcytotoxicity assay for murine histocompatibility antigens (Abst.). Federation proceedings. 30:523, 1971.

16) Gordon, R.O., Santanelli, J.S., and Wade M.E.: The production of tolerance to human erythrocytes in the rat with cytosine arabinoside and cyclophosphamide in previously immunized animals. J. of Immunology. 106:865. 1971.

17) Gordon. R.O., Oppenheim, J.J., Souther, S.C., and Stinson, E.B.: Immediate in vitro leucocyte DNA synthesis: An early indicator of heart allograft rejection. Surgical Forum. 22:258, 1971.

18) Pincus, J.H., and Gordon R.O.: A microassay for the detection of Murine H2 Antigens. Transplantation. 12:509, 1971.

19) Gordon, R.O., Stinson, E.B., Souther, S.G., and Oppenheim, J.J.: Inhibition of the mixed leucocyte reaction as an assay for enhancing alloantiserum. Transplantation. 12:484, 1971.

20) Gordon, R.O., Stinson, E.B., Souther, S.G., Ranney, D.F., and Oppenheim, J.J.: Mechanism of suppression of the mixed leucocyte reaction by enhancing alloantibody (Abst.). Proc. of the European Society for Experimental Surgery. P. 158, April, 1972.

21) Gordon, R.O., Stinson, E.S., Souther, S., and Oppenheim, J.J.: Mixed lymphocyte reaction (MLR) as an assay for the presence of enhancing alloantiserum. In M.R. Schwarz (ed). Proc. of the 6th Leucocyte Culture Conf.. Academic Press, N.Y., 1972

22) Souther, S.G., Gordon, R.O., Oppenheim, J.J., and Stinson, E.B.: In vivo and in vitro studies of cardiac allografts in the rat. Archives of Surgery. 105:756, 1972.

23) Ranney, D.F., Gordon, R.O., Pincus, J.H., and Oppenheim, J.J.: Biological effects of murine histocompatibility antigen solubilized with 3 molar KCl. Transplantation. 16:558, 1973.

24) Gordon, R.O., and Collins, R.E.: Torsional deformities of the lower extremities in children. Clinical Proceedings. Children's Hospital National Medical Center, 1976.

25) Donovan, T., Gordon, R.O., and Nagel, D.: Urinary infections in Total Hip Arthroplasty—Influences of prophylactic cephalosporin and catheterization. Journal of Bone and Joint Surgery. 58A8:1134, 1976.

**Previous Testimony**

**2004**

**January - NONE**

**February**
Joseph Love (Detria Lyles – DC)

**March**
Salma Elhadri (John Kilcarr – VA)
Helen Kayode-Smith (John Marshall – MD)
Eung Soo Kim (Michael Carito – VA)

**April**
Frankie Greever (William Gilcrest – MD)

**May**
Francisco Carrillo (Heather Bardot – VA)

**June**
William Gaskins (Sara Bloom – DC)
Keri Taggret (John McGalvin – VA)

**July**
Letessar Elliott (Shireen Jayatilaka – DC)

**August**
Amanda DuBarry-Basile (Melissa Katz- US District Alexandria, VA)

**September**
Jolanta Czarney (Jeffrey Lanier – MD)

**October - NONE**

**November**
Terrence Williams (Paul Warren – VA)
Kelly Spanos (Thomas Talbott – MD)

**December**
Nadine Singh-Bender (Charles Bowie – MD)
Ann Miller (Melissa Katz – VA)

## 2005

**January - NONE**

**February- NONE**

**March**
Jeff Green (Julia Judkins – VA)

**April**
Bettye Samuels (Julia Judkins – VA)

**May**
Tiffany Marshall (Michael DeSantis – DC)
Shelly Anderson (Jeffrey Seal – DC)
Nina Brooks (Paul Siciliano – DC)

**June**
Kim Clark (Thomas Medford – MD)
Teresa McCoy (Heather Bardot – VA)

**July - NONE**

**August**
Linda Maddox (Thomas Talbott – MD)

**September**
Darshana Patel (Edward Sharkey – MD)

**October - NONE**

**November - NONE**

**December**
Colin Carriere (Richard McBurrows – DC)
Martin Wells (Julia Judkins – VA)
Kevin Parks (O'Neil King – DC)

**2006**

**January - NONE**

**February**
Juanita Brown (Jeffrey Seal – DC)

**March - NONE**

**April**
Arina Pearson (Brenda Howdershell – VA)
Susan Logsdon (Thomas Talbott – MD)

**May**
Astrid Ruggeri (O'Neil King – DC)

**June**
Roosevelt Odum (O'neil King – DC)

**July - NONE**

**August - NONE**

**September**
Felicia Wilson (Richard McBurrows – DC)
Timothy Inabinett (John McGavin – VA)

**October**
Thomas Sauer (John McGavin – VA)
Rosa Clary (O'Neil King – MD)

**November - NONE**

**December - NONE**

**<u>2007</u>**

**January - NONE**

**February**
Quadera Washington (Heather Bardot – VA)

**March - NONE**

**April**
Scott Clarke (Heather Bardot – VA)

**May**
James Swanigan (Heather Bardot – VA)

**June - NONE**

**July**
Oscar Ceron (David Gant – MD)
Teresa Potts (Stephen Flynn or Richard Yeagley – VA)

**August**
Carmelita Mate (Michael Thorsen – VA)

**September - NONE**

**October**
Meeluwanee Ordono (Thomas Talbottt – MD)
Jason Higginbotham (Julia Judkins – VA)
??? Ahmadi (Joseph Lintott – VA)
David Ulrich (Michael Thorsen – VA)

**November - NONE**

**December – NONE**

**2008**

**January**
Amy Trevisan (Julia Judkins – VA)
Annis Monday (Howard Meister – MD)
Lauralee Russell (Thomas Talbott – MD)

**February**
Tawana Shephard (Julia Judkins – VA)

**March – NONE**


Dr. Gordon's compensation rate for work and testimony in this case is $480/hour.