## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

NEILL S. BASSI,

      Plaintiff/Counter-Defendant,

      v.

JARROD M. PATTEN,

      Defendant,

      and

CASEY T. PATTEN,

      Defendant/Counter-Plaintiff.

_____

JARROD M. PATTEN,

      Defendant/Third-Party Plaintiff,

      and

CASEY T. PATTEN,

      Defendant/Counter-Plaintiff/
      Third-Party Plaintiff,

      v.

GREG DAVIS,

      Third-Party Defendant.

_____

Civil Action No. 07-1277 (JDB)

### DEFENDANT CASEY T. PATTEN'S MOTION FOR SUMMARY JUDGMENT

     Defendant Casey T. Patten, through counsel, pursuant to Federeal Rule of Civil

Procedure 56 and Local Civil Rule 7(h), respectfully moves for summary judgment as to all

counts in the Complaint applying to him.  A memorandum of points and authorities and a

proposed order are submitted herewith.

Respectfully submitted,

/s/ Barry  Coburn
Barry Coburn, D.C. Bar # 358020
Jeffrey C. Coffman, D.C. Bar # 493826
COBURN & COFFMAN, PLLC
1244 19th Street, NW
Washington, D.C. 20036
(202) 657-4490

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing motion and accompanying memorandum in support and proposed order were served by ECF upon all counsel in this case, this 23rd day of June, 2008.

_____/s/ Barry Coburn_____
Barry Coburn

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NEILL S. BASSI,** | ) |
| | ) |
| **Plaintiff/Counter-Defendant,** | ) |
| | ) |
| v. | ) |
| | ) |
| **JARROD M. PATTEN,** | ) |
| | ) |
| **Defendant,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CASEY T. PATTEN,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff.** | ) |
| | ) |
| | ) |
| **JARROD M. PATTEN,** | ) |
| | ) |
| **Defendant/Third-Party Plaintiff,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CASEY T. PATTEN,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff/** | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **GREG DAVIS,** | ) |
| | ) |
| **Third-Party Defendant.** | ) |

**Civil Action No. 07-1277 (JDB)**

## MEMORANDUM OF POINTS
## AND AUTHORITIES IN SUPPORT OF DEFENDANT
## CASEY T. PATTEN'S MOTION FOR SUMMARY JUDGMENT

Defendant Casey T. Patten, through counsel, respectfully submits this Memorandum in Support of his Motion for Summary Judgment. For the reasons discussed below, Counts V (Assault) and VI (Battery) should be dismissed pursuant to Federal Rule of Civil Procedure 56.

## I.  Factual and Procedural Background

This incident arises from a physical altercation outside a bar in Georgetown. It is Plaintiff Neill Bassi's contention that he suffered a shoulder injury when Casey Patten's co-defendant, Jarrod Patten, twisted Bassi's arm behind his back sometime after Casey Patten threw two punches at other people outside the bar. Bassi's only claims against Casey Patten are set forth in Count V (Assault/Transferred Intent) and Count VI (Battery). The theory underlying Bassi's theory of assault and transferred intent is that Casey Patten's attempts to punch other people created in Bassi, who was standing some distance away, an apprehension of bodily harm. Bassi's claim of battery is predicated on the contention that Casey Patten aided and abetted Jarrod Patten's infliction of physical injury upon Bassi. When the facts that emerged during discovery are construed in the light most favorable to the Plaintiff, they do not support either theory as a matter of law.

## II.  STANDARD OF REVIEW

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

(1986) (citation omitted).  The opposing party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (internal citations omitted).

The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party."  *DBI Architects, P.C. v. Am. Express Travel Related Servcs., Co.*, 462 F. Supp. 2d 1, 3 (D.D.C. 2006)(citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 ("the court must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law'").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment."  *Williams v. Callaghan*, 938 F.Supp. 46, 49 (D.D.C. 1996).

While the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586 (1986)(citing Fed. R. Civ. P. 56(e))(emphasis in original).  Summary judgment is proper if the "nonmoving party has failed

to make a sufficient showing on a essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

### III.  Count V (Assault/Transferred Intent)

In Count V, Plaintiff contends that he was assaulted by Casey Patten, in the sense of being put in fear of bodily harm, when Casey Patten threw two punches at other people standing some distance away.  An assault is an "intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the victim." *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993)).  An essential element of the tort of assault is that the Defendant's action places the victim in "apprehension of an immediate and harmful or offensive contact." *Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973).

Plaintiff does not allege that Casey Patten caused or attempted to cause harm to Plaintiff.  Rather, Plaintiff relies on the doctrine of transferred intent and alleges Casey Patten "committed an intentional and unlawful threat or attempt, by words and by acts, to physically harm a third person, which caused apprehension of imminent harm or offensive contact in Plaintiff."  (Compl. ¶ 42, attached hereto as Ex. 1).  The record demonstrates, however, that Casey Patten's actions towards Hill did not cause, and could not have caused, reasonable apprehension of imminent harm or offensive contact in Plaintiff.

Plaintiff's reliance on the doctrine of transferred intent does not enable him to evade the fundamental requirement that the Plaintiff be placed in apprehension of imminent harm or offensive contact.  The doctrine of transferred intent merely reflects the principle that:

> [A]n act intended to put a person in apprehension of a harmful or offensive contact is suable as assault not only by or on behalf of the person who was intended by the actor to be put in such an apprehension, but also by and on behalf

of another person *who is in fact put in such apprehension*, although the actor's intention was not directed against him.

6 Am. Jur. 2d Assault and Batttery § 100 (citing *Hall v. McBryde*, 919 P.2d 910 (Colo. Ct. App. 1996); *McGee v. Vanover*, 147 S.W. 742 (Ky. 1912) (emphasis added). Further, the doctrine of transferred intent applies when an assailant attempts to injure one victim, but in fact injures another. *Brooks v. United States*, 655 A.2d 844 (D.C. 1995). Here, Patten attempted to punch another "door guy," and in fact did so. He also hit another person, but did not hit Bassi, who was standing some distance away. By Plaintiff's own admission, when Casey Patten threw the two punches at Mike Hill, Plaintiff was inside Smith Point, *five or six feet behind Hill*, and well outside Plaintiff's range. (Bassi Dep. 3/18/08, 8 at 18, attached hereto as Ex. 2; Bassi Dep. 2/27/08 54 at 3, 55 at 18, Bassi Dep. 2/27/08 Ex. NB5, attached hereto as Ex. 3; Pl.'s Ans. to Def. Jarrod M. Patten's Interrogs. 3-5, attached hereto as Ex. 4). Given that Plaintiff was at least five or six feet behind Hill, Casey Patten's intended target, and out of the range of the two punches thrown, Plaintiff could not reasonably have been in apprehension of an imminent harmful or offensive contact. *See* RESTATEMENT (SECOND) OF TORTS § 24 (1965) ("In order that [a plaintiff] may be put in the apprehension necessary to make the actor liable for an assault, the [plaintiff] *must believe that the act may result in imminent contact* unless prevented from so resulting by the [Plaintiff's] self-defensive action or by his flight or by the intervention of some outside force")(emphasis added). Accordingly, it is respectfully submitted that the Court should grant summary judgment on Count V in Casey Patten's favor.

## IV. Count VI (Battery)

Plaintiff does not contend that he suffered any injury as a result of his contact with Casey Patten. Rather, Plaintiff alleges in Count VI that Casey Patten "is liable for battery to Plaintiff because he, by various means, including words, signs or motions, encouraged, incited, aided or

abetted the assault and battery of Plaintiff by Defendant Jarrod M. Patten."  (Compl. ¶ 46, attached hereto as Ex. 1).  Plaintiff's supporting allegations are as follows:

1.     Plaintiff alleges that after Casey Patten threw the second punch at Mike Hill, both Hill and Davis began fighting with Casey Patten, and Plaintiff stepped out through the doorway. (Compl. ¶¶ 21-21).

2.     Plaintiff alleges that as he stepped out of Smith Point, Defendant Jarrod Patten "battered Plaintiff by grabbing Plaintiff's right arm and wrenching it behind Plaintiff's back." (Compl. ¶ 22).

A battery is "an intentional act that causes a harmful or offensive bodily contact."  *Evans-Reid*, 930 A.2d at 937 (D.C. 2007) (quoting *Etheredge*, 635 A.2d at 917 (citing RESTATEMENT (SECOND) OF TORTS § 18 (1965)).

In the District of Columbia, a cause of action for aiding and abetting requires proof of the following elements:  (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.  *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  But a defendant's "[m]ere presence at the scene . . . would not be sufficient for liability."  *Halberstam*, 705 F.2d at 481 (citing RESTATEMENT § 876(b)).

Here, the undisputed facts are that two brothers approached a bar late at night.  Casey Patten threw two punches at a door guy other than Plaintiff, slightly injuring that person and another bystander, but not touching or coming close to touching Plaintiff.  Then, according to Plaintiff, Jarrod Patten twisted Plaintiff's arm behind his back, injuring him.  There is a complete absence of evidence that the two defendants were working in concert to injure Plaintiff, that any

6

overall plan to injure Plaintiff existed, or that anything Casey Patten did exacerbated or is otherwise causally related to Plaintiff's injury. Accordingly, it is respectfully submitted that summary judgment should issue in Casey Patten's favor as to this Count.

## CONCLUSION

For the foregoing reasons, Plaintiff Casey Patten's respectfully requests that the Court grant his motion for summary judgment as to Counts V and VI.

Respectfully submitted,

/s/ Barry  Coburn_____
Barry Coburn, D.C. Bar # 358020
Jeffrey C. Coffman, D.C. Bar # 493826
COBURN & COFFMAN, PLLC
1244 19th Street, NW
Washington, D.C. 20036
(202) 657-4490

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEILL S. BASSI, | ) |
| | ) |
|     Plaintiff/Counter-Defendant, | ) |
| | ) |
|     v. | ) |
| | )    Civil Action No. 07-1277 (JDB) |
| JARROD M. PATTEN, | ) |
| | ) |
|     Defendant, | ) |
| | ) |
|     and | ) |
| | ) |
| CASEY T. PATTEN, | ) |
| | ) |
|     Defendant/Counter-Plaintiff. | ) |
| | ) |
| | ) |
| JARROD M. PATTEN, | ) |
| | ) |
|     Defendant/Third-Party Plaintiff, | ) |
| | ) |
|     and | ) |
| | ) |
| CASEY T. PATTEN, | ) |
| | ) |
|     Defendant/Counter-Plaintiff/ | ) |
|     Third-Party Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| GREG DAVIS, | ) |
| | ) |
|     Third-Party Defendant. | ) |

## DEFENDANT CASEY PATTEN'S
## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Defendant Casey T. Patten, through counsel, pursuant to Local Civil Rule 7(h), respectfully submits this Statement of Material Facts Not In Dispute, in support of his Motion for Summary Judgment.

1.      On Sunday, January 14, 2007, at approximately 2:30 a.m., Plaintiff Neill S. Bassi ("Plaintiff") was working as a "door guy" at Smith Point bar located at 1338 Wisconsin Avenue, N.W., Washington, D.C. 20007.  (Compl. ¶¶ 11-15; Pl.'s Ans. to Def. Jarrod M. Patten's Interrogs. 3).

2.      At approximately 2:30 a.m., Defendants Jarrod M. Patten ("Jarrod Patten") and Casey T. Patten ("Casey Patten") approached the O Street entrance to Smith Point and requested admission to the bar.  (Compl. ¶ 16; Pl.'s Ans. to Def. Jarrod M. Patten's Interrogs. 4).

3.      Plaintiff and two other door guys, Mike Hill and Third-Party Defendant Greg Davis ("Davis"), refused the Defendants entry, telling them that the bar was closed.  (Compl. ¶ 17; Pl.'s Ans. to Def. Jarrod M. Patten's Interrogs. 3-4).

4.      Jarrod Patten advised Plaintiff that Jarrod Patten was on Smith Point's entry list, knew the owner of Smith Point, Bo Blair, and that the Defendants should be permitted to enter Smith Point.  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 3-4; Bassi Dep. 3/18/08, 7 at 19).

5.      Plaintiff told Defendants that if they knew Bo Blair they should call him.  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 3-4; Bassi Dep. 3/18/08, 8 at 9).

6.      At that point in time, Plaintiff "stepped away from the door and was replaced by Greg Davis and took a step back."  (Bassi Dep. 3/18/08, 8 at 18; Bassi Dep. 2/27/08, 54 at 3; Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 4).

7.      Hill and Davis took Plaintiff's place in front of the Defendants.  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 4).

8.      Plaintiff moved inside the doors of smith point, "[m]aybe 5 [or 6] feet back." (Bassi Dep. 2/27/08, 55 at 18, Bassi Dep. 2/27/08 Ex. NB5).

9.      Shortly thereafter, Casey Patten threw two punches at Mike Hill.  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 4; Bassi Dep. 3/18/08, 8-9).

10.     It was only after Mr. Patten threw these two punches that "Plaintiff, who was back from the entrance, moved forward and stepped through the doorway of the O Street Entrance onto the sidewalk."  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 4).

11.     The only contact between Plaintiff and Casey Patten occurred shortly thereafter, when Plaintiff took Casey Patten to the ground.  (Bassi Dep. 2/27/08, 70-74, Bassi Dep. 3/18/08, 9).

12.     Neither of Casey Patten's punches touched Plaintiff.  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 4; Bassi Dep. 3/18/08, 8-9).

13.     Plaintiff's action in taking Casey Patten to the ground and holding him there did not cause the physical damage to Plaintiff's shoulder of which he complains in this lawsuit.  (Pl's Ans. to Def. Jarrod M. Patten's Interrogs. 4-5; Bassi Dep. 3/18/08, 8-9).


                        Respectfully submitted,


                        /s/ Barry  Coburn_____
                        Barry Coburn, D.C. Bar # 358020
                        Jeffrey C. Coffman, D.C. Bar # 493826
                        COBURN & COFFMAN, PLLC
                        1244   th Street, NW
                        Washington, D.C. 20036
                        (202) 657-4490

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the statement of material facts not in dispute was

served by ECF upon all counsel in this case, this 23rd day of June, 2008.


        ____/s/ Barry Coburn_____
        Barry Coburn

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

―――――――――――――――――――――――――――― )
                                     )
**NEILL S. BASSI,**                  )
                                     )
      **Plaintiff/Counter-Defendant,**  )
                                     )
      **v.**                           )
                                     )        **Civil Action No. 07-1277 (JDB)**
**JARROD M. PATTEN,**                )
                                     )
      **Defendant,**                   )
                                     )
      **and**                          )
                                     )
**CASEY T. PATTEN,**                 )
                                     )
      **Defendant/Counter-Plaintiff.**  )
                                     )
――――――――――――――――――――――――― )
                                     )
**JARROD M. PATTEN,**                )
                                     )
      **Defendant/Third-Party Plaintiff,**  )
                                     )
      **and**                          )
                                     )
**CASEY T. PATTEN,**                 )
                                     )
      **Defendant/Counter-Plaintiff/**  )
      **Third-Party Plaintiff,**       )
                                     )
      **v.**                           )
                                     )
**GREG DAVIS,**                      )
                                     )
      **Third-Party Defendant.**       )
―――――――――――――――――――――――――― )


**<u>ORDER</u>**

    1.    This matter comes before the Court on Defendant/Counter-Plaintiff/Third-Party

Plaintiff Casey Patten's Motion for Summary Judgment.  Upon consideration of the motion, the

opposition, and any replies thereto, the Court HEREBY GRANTS Defendant Case T. Patten's

Motion for Summary Judgment.

**SO ORDERED**

_____

JOHN D. BATES
United States District Judge

Dated: _____

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
#### Civil Division

| | |
|---|---|
| NEILL S. BASSI )<br>45 Almaden Court )<br>San Francisco, CA 94118 )<br> )<br>Plaintiff )<br> )<br>v. )<br> )<br>JARROD M. PATTEN )<br>777 7th Street, N.W. )<br>Apt. 1026 )<br>Washington, D.C. 20001-5715 )<br> )<br>and )<br> )<br>CASEY T. PATTEN )<br>777 7th Street, N.W. )<br>Apt. 717 )<br>Washington, D.C. 20001-5715 )<br> )<br>Defendants. ) | Case No. _____ |

### COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Neill S. Bassi, by and through counsel, and sues Defendants, Jarrod M. Patten and Casey T. Patten (collectively Defendants), for personal injuries and damages. In support thereof, Plaintiff states as follows:

#### Parties

1.    Plaintiff Neill S. Bassi is, and at all times mentioned in this Complaint was, a resident of California, and presently resides at 45 Almaden Court, San Francisco, California 94118. During the academic year, Plaintiff temporarily resides in the District of Columbia at 3734 R Street, N.W., Washington, D.C. 20007.

### Facts Common To All Counts

10.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 9 as if fully set forth herein, and further states:

11.     At all times mentioned in this Complaint, Plaintiff was an agent and employee of a restaurant and bar known as Restaurant Enterprises, Inc., t/a Smith Point, located at 1338 Wisconsin Avenue, N.W., Washington, D.C. 20007 ("Smith Point").

12.     Plaintiff was employed as a "door guy" at Smith Point.

13.     As part of Plaintiff's duties as a door guy, Plaintiff was required to collect money from patrons as they entered Smith Point from the side entrance on O Street, N.W. In addition, Plaintiff was responsible for restricting admission to Smith Point from the side entrance on O Street at or around closing time, which was typically on Friday and Saturday night at 2:30 a.m.

14.     In doing the things alleged in this Complaint, Plaintiff was acting within the course and scope of his employment.

15.     On Sunday, January 14, 2007, at approximately 2:30 a.m., Plaintiff was on duty at Smith Point, standing inside the O Street entrance to Smith Point.

16.     At the same time and place, Defendants approached the O Street entrance to Smith Point, and upon reaching the doorway, demanded admission to Smith Point by Plaintiff.

17.     In response to Defendants' demand, Plaintiff told Defendants that Smith Point was closed, whereupon Defendants became enraged and used abusive, profane, and insulting language towards Plaintiff.

3

18.     As Defendants' verbal abuse of Plaintiff became progressively more hostile, Plaintiff walked away and back from the O Street entrance to allow two other door guys to reason with Defendants.

19.     Defendant Casey T. Patten maliciously, unlawfully, and without any just cause or provocation punched one of the door guys standing inside the O Street entrance in the face.

20.     Defendant Casey T. Patten then threw a second punch at the same door guy, whereupon both door guys stepped through the doorway onto the O Street sidewalk, where Defendant Casey T. Patten began fighting with them.

21.     At this point, Plaintiff stepped through the doorway of the O Street entrance onto the sidewalk.

22.     As he did so, Defendant Jarrod M. Patten, without any just cause or provocation on the part of the Plaintiff, charged Plaintiff and violently assaulted and battered Plaintiff by grabbing Plaintiff's right arm and wrenching it behind Plaintiff's back, causing Plaintiff to sustain severe injuries to his right shoulder, including without limitation, a right shoulder type 2 superior labrum anterior posterior tear.

23.     As a result of Defendant Jarrod M. Patten's assault and battery on him, and as a result of Defendant Casey T. Patten's assault and battery on him, Plaintiff sustained serious and permanent injuries to his body, physical and mental pain and suffering, and monetary losses.

4

injuries; he was prevented from pursuing other ordinary activities; and he has suffered great pain of body and mind, all of which may be permanent in nature.

40.    All such injuries and damages were caused solely by the negligence of Defendant Jarrod M. Patten, without any negligence of the Plaintiff contributing whatsoever.

WHEREFORE, Plaintiff Neill S. Bassi demands judgment against Defendant Jarrod M. Patten in the amount of not less than One Million Dollars ($1,000,000.00) in compensatory damages, plus costs and interest.

## COUNT V
### (Assault/Transferred Intent – Casey T. Patten)

41.    Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 40 with the same effect as if fully set forth herein, and further states:

42.    Defendant Casey T. Patten assaulted Plaintiff in that he committed an intentional and unlawful threat or attempt, by words and by acts, to physically harm a third person, which caused apprehension of imminent harm or offensive contact in Plaintiff. It reasonably appeared to Plaintiff that Defendant Casey T. Patten had the present ability to carry out the harmful or offensive contact, and his display of force reasonably caused Plaintiff to fear imminent bodily harm.

43.    As a direct and proximate result of Defendant Casey T. Patten's assault of Plaintiff, as aforesaid, Plaintiff sustained serious and permanent bodily injuries and damages; he has incurred and will incur in the future medical expenses to care for his injuries; he was prevented from pursuing other ordinary activities; and he has suffered great pain of body and mind, all of which may be permanent in nature.

8

44.   The acts of Defendant Casey T. Patten, as aforesaid, were intentional, malicious, or willful.

WHEREFORE, Plaintiff Neill S. Bassi demands judgment against Defendant Casey T. Patten in the amount of not less than Five Hundred Thousand Dollars ($500,000.00) in compensatory damages, and punitive damages in the amount of not less than Five Hundred Thousand Dollars ($500,000.00), plus costs and interest.

### COUNT VI
**(Battery – Casey T. Patten)**

45.   Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 44 with the same effect as if fully set forth herein, and further states:

46.   Defendant Casey T. Patten is liable for battery to Plaintiff because he, by various means, including words, signs or motions, encouraged, incited, aided or abetted the assault and battery of Plaintiff by Defendant Jarrod M. Patten.

47.   As a direct and proximate result of Defendant Casey T. Patten's conduct, as aforesaid, Plaintiff sustained serious and permanent bodily injuries and damages; he has incurred and will incur in the future medical expenses to care for his injuries; he was prevented from pursuing other ordinary activities; and he has suffered great pain of body and mind, all of which may be permanent in nature.

48.   The acts of Defendant Casey T. Patten, as aforesaid, were intentional, malicious, or willful.

9

WHEREFORE, Plaintiff Neill S. Bassi demands judgment against Defendant Casey T. Patten in the amount of not less than Five Hundred Thousand Dollars ($500,000.00) in compensatory damages, and punitive damages in the amount of not less than Five Hundred Thousand Dollars ($500,000.00), plus costs and interest.

Respectfully submitted,

BODE & GRENIER, LLP

_Eric D. Mitchell_

Eric D. Mitchell (D.C. Bar No. 438607)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, NW
Ninth Floor
Washington D.C. 20036
Phone: (202) 828-4100
Fax: (202) 828-4130

Attorney for Plaintiff


## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

_Eric D. Mitchell_

Eric D. Mitchell

Page 1

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

----------------------------------------x

Neill S. Bassi                          :

    Plaintiff/Counter-Defendant,    :

        v.                          : C.A. No:

Jarrod M. Patten and Casey T. Patten  : 07-1277(JDB)

    Defendants/Counter-Plaintiffs.:

----------------------------------------x

              Washington, D.C.

         Wednesday, February 27, 2008


Deposition of:

        NEILL BASSI

called for oral examination by counsel for Defendant

Jarrod Patten, pursuant to notice, at the Law Offices

of Mallon & McCook, 1776 K Street, Northwest, Suite

200, Washington, D.C., before Jacqueline Schultes,

Registered Professional Reporter and Certified Realtime

Reporter, beginning at 10:36 a.m., when were present on

behalf of the respective parties:



**Capital Reporting Company**

| Page 54 |
| --- |

1   Q.  We've already gone over that.
2   A.  So no.
3   Q.  You just turned and had Greg Davis take your
4   place?
5   A.  Yes.
6   Q.  What did you say to Greg Davis to cause him
7   to change places with you?
8   A.  I don't remember.
9   Q.  What did Greg Davis do after he changed
10  places with you?
11  A.  He took my spot at the door.
12  Q.  Where was Mike Hill at that point?
13  A.  At the door as well.
14  Q.  Where in relation to Greg Davis?
15  A.  To the left.
16  Q.  Where was Jay?
17  A.  I don't know.
18  Q.  Where was Hanna Freeman?
19  A.  Next to Mike Hill.
20  Q.  What happened after Greg Davis took your
21  place?  Describe what was said and what happened.
22  A.  Jarrod becomes increasingly more aggressive,

| Page 55 |
| --- |

1   stepping closer towards us telling us to go fuck
2   ourselves and "Do you know who the fuck we are?  We own
3   this city."
4   Q.  When he said, "We own this city," how far was
5   he from Greg Davis?
6   A.  I don't know.
7   Q.  You don't know because you don't recall or
8   you don't know because you didn't see?
9   A.  I don't know because I don't recall.
10  Q.  You recall him coming towards you?
11  A.  Yes.
12  Q.  What did Greg Davis say in response?
13  A.  I don't know.
14  Q.  You don't know because you don't recall or
15  you don't know because you didn't hear?
16  A.  I don't know because I didn't hear.
17  Q.  Where were you?
18  A.  Maybe 5 feet back, 6 feet.
19  Q.  After Greg Davis took your place at the
20  O Street entrance and you stepped back 5 or 6 feet as
21  you just testified, can you see in NB5 where you were
22  located or is your position obstructed by the door or

| Page 56 |
| --- |

1   something else?
2   A.  You can see it.
3   Q.  Where?  Can you point to it, please, where
4   you were standing.
5   A.  If Greg Davis is here and this is an accurate
6   picture and this is roughly 5 or 6 feet back, then this
7   is where I'm standing.
8   Q.  Write your initials there, please, and put
9   the number "2" above the "B."
10  A.  (Witness complies).
11  Q.  Could you see Jarrod Patten from that
12  position?
13  A.  Yes.
14  Q.  Could you see Casey Patten from that
15  position?
16  A.  Yes.
17  Q.  Could you see Jay from that position?
18  A.  I don't know where he was.
19  Q.  Could you see Mike Hill from that position?
20  A.  Yes.
21  Q.  And you could see Greg Davis from where you
22  were standing there?

| Page 57 |
| --- |

1   A.  Yes.
2   Q.  What happened next?
3   A.  Where did we leave off?
4   Q.  Jarrod Patten said, according to you, "I own
5   this town."
6   A.  "We own this city."
7   Q.  What happened after that?
8   A.  At some point in time very quickly after that
9   Casey Patten throws a punch at one of the door guys.
10  Q.  Who did he throw a punch at?
11  A.  Michael Hill.
12  Q.  Did the punch connect?
13  A.  Yes.
14  Q.  Did you see it connect?
15  A.  Yes.
16  Q.  Where did Mr. Patten, Casey Patten's fist
17  strike Mike Hill?
18  A.  His face.
19  Q.  What part of his face?
20  A.  I don't recall.
21  Q.  Did Casey Patten say anything prior to
22  punching Mike Hill in the face?

## Capital Reporting Company

| Page 70 |
|---|
| 1  O Street towards Wisconsin. The pain was so intense it |
| 2  took me a second to kind of gather myself. By the time |
| 3  I gathered myself, Casey had then charged towards me at |
| 4  which point I took Casey down to the ground. |
| 5      Q.  Let me ask Mr. Coburn to step up again and if |
| 6  you could demonstrate how you took Casey Patten to the |
| 7  ground that morning. |
| 8      A.  I have been spun around and he's coming at |
| 9  me. |
| 10     Q.  You're still facing Wisconsin Avenue when |
| 11  you're standing on O Street? |
| 12         MR. MITCHELL:  Make the wall behind |
| 13  Mr. Coburn Wisconsin Avenue. |
| 14         THE WITNESS:  So I spun around, you're coming |
| 15  at me and I take you this way. |
| 16  BY MR. McCOOL: |
| 17     Q.  Did you grab his shirt or grab his clothing? |
| 18     A.  I would have grabbed around his shoulder |
| 19  area. |
| 20     Q.  You made a grabbing motion and, for the |
| 21  record, twisted your body to the right in a motion that |
| 22  you would take Casey Patten to the ground; is that a |

| Page 72 |
|---|
| 1      A.  I don't know. |
| 2      Q.  During this time did he punch you? |
| 3      A.  No. |
| 4      Q.  Did he hit you in any way? |
| 5         MR. MITCHELL:  Who are we talking about? |
| 6         MR. McCOOL:  Jarrod Patten. |
| 7  BY MR. McCOOL: |
| 8      Q.  As you were taking Casey Patten to the ground |
| 9  did Mr. Jarrod Patten strike you in any way as you were |
| 10  doing that? |
| 11     A.  After I had taken Casey to the ground? |
| 12     Q.  As you were taking him down to the ground or |
| 13  after you took him to the ground. |
| 14     A.  No. |
| 15     Q.  Did he say anything to you as you were taking |
| 16  Casey Patten to the ground? |
| 17     A.  I don't know if he did. |
| 18     Q.  You don't recall? |
| 19     A.  No. |
| 20     Q.  Where was Greg Davis as you were taking Casey |
| 21  Patten to the ground? |
| 22     A.  I don't know. |

| Page 71 |
|---|
| 1  fair description of what you just did with Mr. Coburn? |
| 2      A.  Grabbed him by his shoulder and twisted -- |
| 3      Q.  I'm going to get to that.  Let me step back |
| 4  and start again.  You've described grabbing Casey |
| 5  Patten in some way twisting your body towards the right |
| 6  and taking Casey Patten down to the ground; is that a |
| 7  fair characterization of what you just demonstrated |
| 8  with Mr. Coburn? |
| 9      A.  I would say I used his momentum to take him |
| 10  down.  I wasn't grabbing him down and throwing him |
| 11  down. |
| 12     Q.  Did Casey Patten land on his back or his |
| 13  side? |
| 14     A.  Flat on his back. |
| 15     Q.  Let's back up a bit.  Did you grab clothing |
| 16  or did you grab a part of his body, Casey Patten? |
| 17     A.  I don't remember. |
| 18     Q.  Did you grab him with both hands? |
| 19     A.  I would have touched him with both hands but |
| 20  most of the direction would have been with my left. |
| 21     Q.  As you were taking Casey Patten to the ground |
| 22  where was Jarrod Patten? |

| Page 73 |
|---|
| 1      Q.  Where was Mike Hill as you were taking Casey |
| 2  Patten to the ground? |
| 3      A.  I don't know. |
| 4      Q.  Where was Jay as you were taking Casey Patten |
| 5  to the ground? |
| 6      A.  I don't know. |
| 7      Q.  Where was Hanna Freeman as you were taking |
| 8  Casey Patten to the ground? |
| 9      A.  I don't know. |
| 10     Q.  What happened after you took Casey Patten to |
| 11  the ground? |
| 12     A.  My butt was facing towards Wisconsin Avenue |
| 13  and I am parallel -- |
| 14     Q.  To O Street? |
| 15     A.  Yes.  I'm on top of him crisscross and I am |
| 16  restraining him holding him down. |
| 17     Q.  Did Casey Patten resist you in any way? |
| 18     A.  Yes. |
| 19     Q.  How did he resist you?  What did he do? |
| 20     A.  He tried to punch at me but because I was on |
| 21  top of him he couldn't really punch.  He then tried to |
| 22  grab at my jacket and try to pull and resist. |

| Page 74 | Page 76 |
|---|---|
| 1    Q.  Was he successful? | 1    approached him? |
| 2    A.  No.  I told him if he just gave up that I was | 2       A.  Standing at the DJ booth. |
| 3    going to let him up. | 3       Q.  Do you remember anyone standing with him or |
| 4       Q.  So what happened? | 4    near him as you approached him? |
| 5       A.  So after a few more attempts to struggle, he | 5       A.  Yes. |
| 6    then kind of just relaxed and I proceeded to stand up | 6       Q.  Do you recall Andrew Taylor being there? |
| 7    off of him. | 7       A.  I don't recall who that is. |
| 8       Q.  Did there come a time when you saw Mike Hill | 8       Q.  Do you recall Winston Lord being there. |
| 9    again that evening? | 9       A.  No. |
| 10      A.  Yes. | 10      Q.  Did you see Jay as you went back inside the |
| 11      Q.  Did there come a time when you saw Greg Davis | 11    O Street entrance to get Bo? |
| 12    again that evening? | 12      A.  I don't know. |
| 13      A.  Yes. | 13      Q.  You don't recall? |
| 14      Q.  If my understanding of your testimony is | 14      A.  I don't know where he was.  I don't remember |
| 15    correct, you didn't know where they were when you took | 15    seeing him. |
| 16    Casey Patten down to the ground, correct? | 16      Q.  What did you say to Bo when you went inside? |
| 17      A.  Correct. | 17      A.  I said, "Bo, I need you right now." |
| 18      Q.  Did you know where they were when you were | 18      Q.  What happened next? |
| 19    restraining him on the ground? | 19      A.  He came.  He led the way back up to the |
| 20      A.  No. | 20    O Street entrance. |
| 21      Q.  When did you next see them after that? | 21      Q.  Who did he lead, just you or anyone else? |
| 22      A.  After I come up from the bar. | 22      A.  I don't know.  I was behind him.  There was |

| Page 75 | Page 77 |
|---|---|
| 1    Q.  So sometime later? | 1    like 100 people in the bar that were all around the DJ |
| 2    A.  Yes. | 2    booth.  There was people out in the courtyard. |
| 3    Q.  Tell me, there came a time when you let Casey | 3       Q.  Do you mean the bottom of the steps inside |
| 4    Patten up off the ground? | 4    the O Street entrance, is that the courtyard you're |
| 5    A.  Yes. | 5    referring to? |
| 6    Q.  Where did you go after that? | 6       A.  Yes. |
| 7    A.  After I released Casey I stood up and | 7       Q.  Where did Bo go after you alerted him that |
| 8    proceeded to go straight down to the bar and to find | 8    there was something going on?  You said he led you up |
| 9    Bo. | 9    towards O Street.  Where did he go and what did you |
| 10   Q.  Did you see Jarrod Patten at all during this | 10    see? |
| 11    time frame? | 11      A.  He went up the stairs to the walkway and |
| 12   A.  No. | 12    right to the O Street door to the street. |
| 13   Q.  Did you eventually come into contact with Bo | 13      Q.  Did you follow him? |
| 14    Blair? | 14      A.  Yes. |
| 15   A.  Yes. | 15      Q.  Did you remain inside the O Street entrance |
| 16   Q.  How did you contact him, in person or did you | 16    or did you go out onto the sidewalk? |
| 17    call him or how did you reach him when you went back | 17      A.  Remain in the entrance. |
| 18    inside the O Street entrance? | 18      Q.  Did you look outside to see what was going |
| 19   A.  In person. | 19    on? |
| 20   Q.  Where did you reach him? | 20      A.  Yes. |
| 21   A.  In the bar. | 21      Q.  What did you see and hear, as well? |
| 22   Q.  Where was he inside the bar when you | 22      A.  When I got up there, it looked like the fight |



EXHIBIT

135

bobbie

Page 190

```
1              CERTIFICATE OF NOTARY PUBLIC

2       I, Jacqueline Schultes, Registered Professional

3   Reporter and Certified Realtime Reporter, the officer

4   before whom the foregoing deposition was taken, do

5   hereby certify that the witness whose testimony appears

6   in the foregoing deposition was duly sworn by me; that

7   the testimony of said witness was taken by me in

8   stenotype and thereafter reduced to typewriting under

9   my direction; that said deposition is a true record of

10  the testimony given by said witness; that I am neither

11  counsel for, related to, nor employed by and of the

12  parties to the action in which this deposition was

13  taken; and, further, that I am not a relative or

14  employee of any counsel or attorney employed by the

15  parties hereto, nor financially or otherwise interested

16  in the outcome of this action.

17

18                        JACQUELINE SCHULTES

19                 Notary Public in and for the

20           Commonwealth of The District of Columbia

21  My commission expires:

22  February 29, 2012
```

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2                       Civil Division

 3   - - - - - - - - - - - - - - -x
                                   :
 4   NEILL S. BASSI,               :
                                   :
 5            Plaintiff,           :
                                   :
 6        vs.                      : Civil Action No.
                                   : 07-1277 (JDB)
 7   JARROD M. PATTEN, et al.,     :
                                   :
 8            Defendants.          :
                                   :
 9   - - - - - - - - - - - - - - -x

10

11                           Washington, D.C.

12                           Tuesday, March 18, 2008

13        Videotaped Deposition of

14             NEILL S. BASSI

15        a Plaintiff, taken on behalf of counsel for

16   the Defendant Casey T. Patten in the above-entitled

17   matter, before Denise M. Brunet, RPR and Notary Public

18   in and for the District of Columbia, taken at the

19   offices of Mallon & McCool, 1776 K Street, Northwest,

20   Suite 200, Washington, D.C., commencing at 2:04 p.m.,

21   when were present on behalf of the respective parties:

22
```



256c3306-67a8-483b-b0e0-55b93f9d110f

1        From there, we would work the Wisconsin

2    Street door for a bit until we were instructed to move

3    over to the O Street entrance, at which point in time,

4    we would open up the O Street entrance doors, finish

5    setting up the ropes, go get the list downstairs.   I

6    would get the door cash from either the manager or if

7    Bo had arrived, from Bo.

8        Once I did that, it would be just like any

9    other night, you know, I'd be working the money on the

10   inside up against the wall with the table and the

11   chair, and Greg Davis and Mike Hill and Jay would be

12   working out the street, you know, working on the ropes

13   and whatnot.

14       At around 2:00, like all nights, we broke

15   down the ropes, put the list downstairs, gave Bo the

16   cash and closed shop for the night, shut the doors --

17   not shut the doors, but we weren't allowing anyone

18   else in.

19       At around 2:30, the Patten brothers showed

20   up requesting to be admitted into Smith Point.   They

21   approached.   Jarrod Patten, you know, said, you know,

22   can we get in, let's get in, I'm on the list, I know

1    Bo.  We told him the doors were closed and that if he

2    knew Bo, he should call Bo.

3           From there, he became increasingly

4    aggressive.  I'd say both brothers did.  You know,

5    they became -- demand to be let into Smith Point.

6    And, you know, we've dealt with kind of drunk,

7    demanding patrons a lot, you know, never with this

8    sort of intensity as the night, you know, progressed.

9           But, you know, we've dealt with guys coming

10   up to the door a lot saying, you know, I know Bo, let

11   me in.  And, you know, like the form response we

12   always give is, you know, if you know Bo, you can call

13   Bo.  Because if they did know Bo, they'd have Bo's

14   number and they'd give Bo a call.  And, you know, that

15   was rules instructed by Bo, you know, if they knew Bo

16   and they said they knew him, then he can give him a

17   call.

18          When I gave them that answer, they seemed

19   to get increasingly hostile, at which point in time, I

20   stepped away from the door and was replaced by Greg

21   Davis and took a step back.  They continued to argue

22   with Mike Hill and Greg Davis and, from which point,

256c3306-67a8-483b-b0e0-55b93f9d110f

Page 9

1    completely unprovoked, Casey Patten threw a punch at

2    Mike Hill.  He then unprovokingly threw a second punch

3    at Mike Hill, which happened to hit a girl standing

4    near Mike, at which point, Mike Hill and Greg Davis

5    proceeded to exit the Smith Point doorway onto the O

6    Street sidewalk leaving out to the right.  I went out

7    straight, a little bit to the left, and Jarrod Patten

8    approached me, grabbing my right arm, swinging it up

9    behind me, spinning me around.

10        By the time I collected myself, Casey

11   Patten was now approaching me, coming towards me, at

12   which point I defended myself and took him to the

13   ground, held him to the ground until -- you know,

14   asking him, you know, stop fighting with me, I'll let

15   you up.  Just stop fighting with me, I'll let you up.

16        And after a little bit of time, he gave up.

17   You know, he kind of just released the grabbing of my

18   jacket and, at which point, I stood up and headed

19   downstairs to go grab Bo.  I told Bo, who was at the

20   DJ booth, I need you right now.  He came upstairs.  We

21   proceeded out to the O Street doorway and by that

22   time, it looked like most of the fight had been broken

256c3306-67a8-483b-b0e0-55b93f9d110f

1            CERTIFICATE OF NOTARY PUBLIC

2            I, Denise M. Brunet, the officer before

3 whom the foregoing deposition was taken, do hereby

4 certify that the witness whose testimony appears in

5 the foregoing deposition was duly sworn by me; that

6 the testimony of said witness was taken by me

7 stenographically and thereafter reduced to print by

8 means of computer-assisted transcription by me; that

9 said deposition is a true record of the testimony

10 given by said witness; that I am neither counsel for,

11 related to, nor employed by any of the parties to this

12 litigation and have no interest, financial or

13 otherwise, in the outcome of this matter.

14

15 _____

16 Denise M. Brunet
    Notary Public in and for the
    District of Columbia

17

My commission expires:
18 November 30, 2012

19

20

21

22

23

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

NEILL S. BASSI,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Civil Action No.: 07-1277 (JDB)
                                         )
JARROD M. PATTEN, et al,                 )
                                         )
        Defendants.                      ).

### PLAINTIFF NEILL S. BASSI'S
### ANSWERS TO DEFENDANT JARROD M. PATTEN'S INTERROGATORIES

COMES NOW Plaintiff Neill S. Bassi, by undersigned counsel, pursuant to Rule 33 of the

Federal Rules of Civil Procedure, and answers the Interrogatories of Defendant Jarrod M. Patten.

*General Objections to All Interrogatories*

1.      Plaintiff objects to Defendant's Interrogatories (including the accompanying

definitions and instructions) to the extent that the Interrogatories seek answers that constitute

attorney work product, disclose the mental impressions, conclusions, opinions or legal theories

of any attorneys for Plaintiff, contain privileged attorney-client communications, or are

otherwise protected from disclosure under applicable privileges, laws or rules.

2.      Plaintiff objects to Defendant's Interrogatories to the extent that they seek

information prepared in anticipation of litigation.

3.      Plaintiff objects to Defendant's Interrogatories to the extent that they are neither

relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiff objects to Defendant's Interrogatories to the extent that the answers call

for a legal conclusion.

1

14.    Plaintiff's general objections shall be deemed to continue throughout the responses to specific Interrogatories that follow, even where not further referred to in such responses.

Without waiving the foregoing objections, Plaintiff Neill S. Bassi responds and specifically objects to Defendant's Interrogatories as follows:

1.    State your full name, address, date of birth, and Social Security number.

Answer:    Neill S. Bassi, 45 Almaden Court, San Francisco, CA 94118; 11/27/05. Plaintiff objects to the part of Interrogatory No. 1 requesting his social security number on the ground that this information is neither relevant to the case nor reasonably calculated to lead to the discovery of admissible evidence.

2.    Describe in detail the events leading up to, including, and immediately following the complained of incidents. In doing so, please describe your impressions of the emotional and physical state of those involved or in the area, including whether they seemed belligerent or intoxicated and the reasons for which you contend the complained of incidents occurred.

Answer:    Prior to the incident, Plaintiff was seated inside the O Street entrance to Smith Point performing his regular duties as a door guy, including collecting cover charges from patrons who were pre-approved admittees. Shortly before 2:30 a.m., Plaintiff left his seated station inside the O Street entrance and brought the ropes and posts inside and then stood at the entrance to curtail further admission. At about 2:30 a.m., the Defendants approached the O Street entrance. When Defendants reached the doorway where Plaintiff was standing, both Defendants demanded admission to Smith Point. Defendants appeared and sounded intoxicated. In response to Defendants' demand, Plaintiff told Defendants that Smith Point was closed. Defendant Jarrod M. Patten in an aggressive manner stated "Are you kidding? Go get Bo. I know

3

Bo, Bo will let us in." Plaintiff responded "If you know Bo, then you can call Bo, and he will let you in." When Defendants heard this information, they became enraged. Defendant Jarrod M. Patten, among other abusive statements, told Plaintiff "F___ you, do you know who we are? Go get Bo, he'll let us in." Both Defendant Jarrod M. Patten and Defendant Casey T. Patten also began to curse Plaintiff in a stream of abusive and profane language. As Defendants' verbal abuse of Plaintiff escalated, Plaintiff called one of the other door guys to come up and Plaintiff walked away from the O Street entrance and allowed the two other door guys to take his place in front of Defendants. As Plaintiff was back from the O Street entrance, he could see and hear Defendants aggressively state such things as "f___ you, we own this city."

Suddenly, Defendant Casey T. Patten punched one of the other door guys in the face. The left side door guy who received this punch immediately reached out and took hold of Defendant Jarrod M. Patten's jacket, which he held for a brief period of time. Defendant Casey T. Patten then threw a second punch at the same door guy, which missed the door guy but struck a female bystander, Hannah Freeman. When Defendant Casey T. Patten's second punch missed the door guy but hit the woman's face, both door guys stepped over the threshold in order to restrain Defendant Casey T. Patten until police could be summoned to the scene. The two door guys and Defendant Casey T. Patten moved to the right (toward Wisconsin Avenue) outside the O Street entrance.

At this point, Plaintiff, who was back from the entrance, moved forward and stepped through the doorway of the O Street entrance onto the sidewalk. When Plaintiff exited the O Street entrance, Defendant Jarrod M. Patten was back away from the doorway and off to the Plaintiff's left. As Plaintiff exited the doorway, Defendant Jarrod M. Patten, who was positioned to the left of Plaintiff, charged Plaintiff. As Defendant Jarrod M. Patten charged Plaintiff,

4

Plaintiff put both hands out to stop him and protect himself, and Defendant Jarrod M. Patten grabbed Plaintiff's right arm and ripped it behind Plaintiff's back. Plaintiff immediately felt his right arm go numb. At that point, Defendant Jarrod M. Patten let Plaintiff's arm go and passed by him. Defendant Casey T. Patten then charged Plaintiff. Plaintiff defended himself against Defendant Casey T. Patten's charge by grabbing Defendant Casey T. Patten and took him to the ground. As Plaintiff held Defendant Casey T. Patten to the ground in an attempt to restrain him, Defendant Casey T. Patten kept trying to fight Plaintiff. Plaintiff repeatedly told Defendant Casey T. Patten to stop and he would be let up. Defendant Casey T. Patten eventually stopped, so Plaintiff let him go, at which point Plaintiff got up, and went back through the O Street entrance to get the owner of Smith Point.

4. Identify all persons, including their names, addresses and telephone numbers, who witnessed the complained of incidents or arrived at the scene of the complained of incidents within two hours after their occurrence and describe what you believe each such person knows.

Answer:

Neill S. Bassi

Mike Hill
Georgetown University
Yates Memorial Field House
Box 571126
Washington, D.C. 20057-1126
(202) 687-2400
A door guy on duty at the time of the incident. Has knowledge pertaining to liability and damages.

Greg Davis
GAP International
700 Old Marble Road
Springfield, PA 19064
(610) 328-0308
(240) 876-6274
A door guy on duty at the time of the incident. Has knowledge pertaining to liability.

<u>Answer:</u>    On or about February 15, 2007, Plaintiff attempted to participate in one work out with members of the Georgetown lacrosse team. After only a few minutes of action, the pain in Plaintiff's right shoulder was so great that he was forced to stop playing. Plaintiff took himself off the lacrosse field and did not return.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING PAPER ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

Date: 11/16/07                                              _____
                                                           Neill S. Bassi

Respectfully submitted,

NEILL S. BASSI

By: _____
Eric D. Mitchell (D.C. Bar No. 438607)
Bode & Grenier, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100
(202) 828-4130 (fax)
*Counsel for Plaintiff*

17