UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEILL S. BASSI,

    Plaintiff,

        v.

JARROD M. PATTEN, et al.,

    Defendants.

Civil Action No.  07-1277 (JDB)

## MEMORANDUM OPINION

This case arises from a physical altercation between plaintiff Neill Bassi and defendants Jarrod and Casey Patten at a bar known as Smith Point in the District of Columbia.  Bassi contends that the Pattens are liable for assault, battery, and intentional infliction of emotional distress, and seeks compensatory damages for medical expenses, physical pain, and emotional distress, along with punitive damages.[1]  A jury trial is scheduled to commence on January 12, 2009.  The parties have filed six motions in limine to exclude evidence.  Casey Patten's motion in limine to exclude the statement of Hannah Freeman (ECF #68) is no longer in dispute, with the parties having agreed that the statement will be excluded.  See Bassi's Response (ECF #69).[2]  The Court will address the remaining motions below.

---

[1]  Casey Patten alleges that it was Bassi who instigated the altercation and originally filed three counterclaims against Bassi based on assault.  Counterclaim ¶¶ 1-22 (filed Aug. 15, 2007).  His counsel has informed the Court that he does not intend to pursue those counterclaims and will orally move to dismiss the claims prior to commencement of trial.  The Court presumes that his version of how the underlying events transpired, however, remains unchanged.

[2]  For ease of reference, the Court will refer to each of the six motions in limine primarily by reference to their document number on the electronic docket.

**DISCUSSION**

**I. Evidence Pertaining to Contributory Negligence or Assumption of Risk by Bassi**

Bassi moves to preclude defendants from introducing evidence that he was contributorily negligent or assumed the risk of his injuries by the nature of his employment as a doorman at Smith Point or by his conduct. See Pl.'s Mot. at 1-3 (ECF #63). He contends that, under District of Columbia law, neither contributory negligence nor assumption of risk is available as a defense to an intentional tort.[3] See id. at 2-3 (citing, inter alia, Muldrow v. Re-Direct, Inc., 493 F.3d 160, 165 (D.C. Cir. 2007), Rude v. Dancing Crab at Washington Harbour, LLC, 245 F.R.D. 18, 25-26 (D.D.C. 2007), and Sinai v. Polinger Co., 498 A.2d 520, 525 n.7 (D.C. 1985)). Defendants do not contest this principle (having filed no opposition), and the Court finds the argument grounded in sound legal precedent. Therefore, the Court will grant Bassi's motion to exclude evidence of contributory negligence or assumption of risk by Bassi. However, Bassi does not identify which specific events or exhibits should be excluded, and the Court is cognizant that some evidence that might cast Bassi as assuming some risk (e.g., Bassi's alleged altercation with Casey Patten) may nonetheless be admissible because it may be relevant to legitimate issues, such as how Bassi's damages were sustained. Hence, the parameters of the Court's ruling will, of necessity, be further defined during the course of trial.[4] Defendants should be mindful of the distinction between evidence that is relevant to assault and/or battery, and evidence that pertains solely to whether Bassi assumed the risk of his injuries or acted negligently.

---

[3] Plaintiff initially raised a claim of negligence against Jarrod Patten (Count Four), but this claim was dismissed upon plaintiff's unopposed motion. See Minute Order (Oct. 3, 2008).

[4] The Court's ruling may, in effect, be as much about foreclosing an argument by defendants as about excluding specific evidence.

## II.   Testimony of Dr. Robert O. Gordon

Dr. Gordon, an orthopedic surgeon, has been identified by defendants as an expert witness on Bassi's physical injuries, including causation. See, e.g., Jarrod Patten's Pretrial Statement at 9.  Bassi moves to exclude any testimony by Dr. Gordon opining that some "other mechanism of injury" could have caused his shoulder injury -- that is, an event other than Jarrod Patten allegedly forcing Bassi's arm behind his back. See Pl.'s Mot. at 2-5 (ECF #64).  Bassi contends that exclusion of such testimony is warranted on the ground that Dr. Gordon failed to offer in his expert report or deposition any other possible mechanism of injury besides Jarrod Patten's alleged actions, and any testimony at trial on "other mechanisms" would be both an unfair surprise and speculative because Gordon does not have a factual basis for opining that any other event caused Bassi's injury. Id. at 3-5.  In response, Jarrod Patten contends that Dr. Gordon's report provided notice to Bassi that he would testify that some other event could have been the mechanism of Bassi's injury and this subject was fully explored in Dr. Gordon's deposition. See Jarrod Patten's Opp. at 2 (ECF #71).  Jarrod Patten also argues that Dr. Gordon properly declined to accept only one party's version of events and instead provided a balanced opinion that would allow for all of the facts elicited to be considered.

Having reviewed the expert report and deposition, the Court concludes that defendants complied with the disclosure requirements of Fed. R. Civ. P. 26(a)(2).  Dr. Gordon's expert report states that "other mechanisms of injury . . . could have caused this [the torn shoulder labrum] to have occurred," and his deposition testimony explained his opinion in detail. See Dr. Gordon's Report at 1 (Pl.'s Mot., ECF #64, Ex. 2); Gordon Dep. at 24-32.  A fair reading of his testimony, viewed in context, does not speculate that some other unknown event caused Bassi's shoulder injury, but instead offers an opinion on how a torn shoulder labrum occurs and leaves it

to the jury to determine, based on the evidence elicited at trial, whether Bassi's torn shoulder labrum was caused by the events as told by Bassi <u>or</u> as indicated by other evidence. The following excerpt from Dr. Gordon's deposition highlights this point:

> Q: . . . [L]et's talk about causation . . . [Dr. Connell] indicates that the large labral tear was consistent with the patient's mechanism of injury. Do you see that?
>
> A: Yes, I do.
>
> Q: And in your report . . . you agreed with that conclusion of Dr. Connell.
>
> A: Well, what I said was that it could be a reasonable explanation for the type of injury that did occur, but there are other mechanisms as well. He has based all that on what the patient told him. And anything that can cause you to sublux your shoulder and tear your labrum, there are multiple -- you know, you can sublux your shoulder in lots of different ways. But what I said was his explanation was certainly -- could be consistent with what was found . . . .
> . . . .
>
> Q: But your report doesn't outline what those other mechanisms of injury --
>
> A: It's anything that can cause your shoulder to sublux. And you can fall on your outstretched arm; you can put it in a position that it is not used to being in; you can pull it too far one way, it could be one way or another. Subluxation of the shoulder happens all the time in sports. It happens in other, you know, work injuries. It happens in car accidents. Anything that can make your shoulder sublux . . . which means partly dislocate but not completely dislocate.
> . . . .
>
> . . . [I]f there is somebody else there that says it happened a different way, you know, then that could be just as easily true as well. There is no way that anybody that wasn't there can tell you that.
> . . . .
>
> Q: Have you read anything in this case that would suggest that Neill Bassi hurt his arm other than the way he described to Marc Connell?
>
> A: I don't recall right now, but I think there were some depositions that I may have read or something that indicated there were some disagreements about exactly what happened to his arm when this happened . . . . I don't think you can say that one was more likely than the other. I mean, anything that can cause a shoulder to sublux can cause a labrum to tear. And bringing your arm behind your back is not

>  the only way that you can sublux your shoulder . . . .

Gordon Dep. at 24-29. Of course, Dr. Gordon may not provide testimony in a way that instructs the jury as to which version of facts should be accepted or on what basis, as that would be beyond his role as an expert. But Dr. Gordon has already acknowledged that limitation. See id. at 29. Therefore, the Court will deny Bassi's motion to exclude any testimony by Dr. Gordon opining that some "other mechanism of injury" could have caused Bassi's shoulder injury.

### III.   Evidence Pertaining to Bassi's Self-Reported Symptoms on Dr. Harry Verby's Intake Questionnaires Dated January 4, 2005

Dr. Harry Verby, a psychiatrist who treated Bassi for Attention Deficit Disorder and Attention Deficit Hyperactivity Disorder from 2005 to 2007, has provided deposition testimony concerning eight "intake questionnaires" that Bassi filled out on January 4, 2005, in which Bassi reported symptoms of irritability, aggression, anger, and rage.[5] Bassi moves to preclude defendants from submitting evidence of, or making any mention of, those symptoms pursuant to Fed. R. Evid. 404(a), arguing that they will inappropriately use this information as character evidence to prove action in conformity therewith -- that is, that Bassi initiated the altercation at issue. See Bassi's Mot. at 5 (ECF #65). He contends that the evidence is also inadmissible under Rules 402 and 403 on the ground that information dating back two years from the events at issue is too old to be relevant and that, even if relevant, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Id.

---

[5] These intake questionnaires -- or "diagnostic instruments" -- are identified as the following: the Amen Clinics, Inc. Adult Intake Questionnaires; the Amen Adult General Symptom Checklist; the Amen Clinics, Inc. Anxiety and Depression Type Questionnaire; the Mood Disorder Questionnaire; the Amen Clinic Learning Disability Screening Questionnaire; the Amen Brain System Checklist; the Medical Review of Symptoms; and the Amen Clinics, Inc., ADD Type Questionnaire. See Pl.'s Mot. at 2 (ECF #65).

Defendants respond that they will not use Dr. Verby's testimony or the intake forms as character evidence, but instead seek to introduce that evidence to establish a bar or limitation on the damages sought by Bassi.  See Jarrod Patten's Opp. at 2 (ECF #72); Casey Patten's Opp. at 3 (ECF #74).  They contend that this evidence is highly probative because Bassi seeks damages for "psychological injuries" which two of his witnesses, Dr. Susan Trachmann and Dr. Brian Doyle, have determined include disorders characterized by some of the same symptoms in the intake forms -- anxiety, irritability, and anger.  See Jarrod Patten's Opp. at 2 (ECF #72) (quoting Bassi's Answer to Jarrod Patten's Interrogatories, Answer No. 13); Pl.'s Pretrial Statement at 14-15.

Because Bassi seeks recovery of damages for his alleged psychological injuries, evidence concerning whether his psychological condition was preexisting is highly probative on the issue of damages.  See Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986) (holding that jury would be aided "in measuring fairly the extent of damages" by evidence of other causes of plaintiff's emotional suffering not attributable to defendant); Kakeh v. United Planning Organization, --- F. Supp. 2d ---, 2008 WL 4925060, at *2 (D.D.C. Nov. 19, 2008) ("once a plaintiff makes a claim of emotional distress, the defendant is allowed to explore any alternative or contributing causes to that emotional distress"); Bell v. Gonzales, Civil Action No. 03-0163, 2005 WL 3555490, at *9 (D.D.C. Dec. 23, 2005) ("Evidence that an event other than [the alleged unlawful conduct] could have caused [plaintiff's] emotional suffering is highly probative on the issue of damages.").  Bassi claims that the information in his intake questionnaires nonetheless lacks probative value because Dr. Verby explained that his symptoms had improved by January 2007.  Pl.'s Reply at 2 (ECF #76).   But the extent of his improvement -- and the impact that would have on consideration of damages -- is for the jury to decide.

Bassi further argues that the information in the questionnaires is unfairly prejudicial

6

because "it is all too human to assume that, because Mr. Bassi self-reported certain traits, that he must have acted in conformity with them." Id. at 3.  The Court finds that the probative value of the intake questionnaires significantly outweighs any potential prejudice to Bassi.  Both Dr. Trachmann and Dr. Doyle relied on Bassi's symptoms of anxiety, irritability, and "edgy and short" interactions with his friends, in concluding that, as a result of his shoulder injury, he suffered from "mood disorder with depressive features," "anxiety disorder with generalized anxiety," or, in Dr. Trachman's view, depression and symptoms of post-traumatic stress disorder.  See Dr. Trachmann's Report at 3-4 (Jarrod Patten's Opp., ECF #72, Ex. B); Dep. of Dr. Doyle at 36-39 (Jarrod Patten's Opp., ECF #72, Ex. C).  It is self-evident that the extent of these symptoms prior to his shoulder injury would be relevant in determining causation.  Indeed, Dr. Trachmann's own testimony indicates the importance of prior symptoms in making that assessment.  She states her belief that, "prior to that night, he had no psychiatric history and encountered nothing in his life that in any way would cause his current symptoms," strongly implying that prior symptoms would be highly relevant to a diagnosis and conclusion concerning causation.  Dr. Trachmann's Report at 5.  Hence, the Court concludes that the probative value of Bassi's self-reported symptoms of irritability, aggression, anger, and rage from the January 2005 intake questionnaires substantially outweighs any unfair prejudice to him.  As for the other factors under Rule 403, appropriate jury instructions will eliminate the risk of confusion of the issues and further reduce any prejudice to plaintiff.  See Fed. R. Evid. 403 advisory committee notes ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.").  Thus, the Court will deny Bassi's motion to preclude defendants from submitting evidence of, or making any mention of, his self-reported symptoms of irritability, aggression, anger, and rage in 2005.

**IV.    Testimony of Dr. Stephen W. Siebert**

Dr. Siebert, a psychiatrist, has been identified by defendants as an expert witness on Bassi's psychiatric injuries.  See, e.g., Jarrod Patten's Pretrial Statement at 9.  Bassi moves to exclude any testimony by Dr. Siebert about Bassi's credibility, which Bassi believes is indicated by Dr. Siebert's deposition.  See Pl.'s Mot. at 2-3 (ECF #66).  In relevant part, Dr. Siebert stated that, although he initially found Bassi to be credible and unlikely to exaggerate his symptoms, he later "modif[ied] that opinion somewhat" upon learning that "[Bassi] was not reporting an entirely accurate history."  Dep. of Dr. Siebert at 29 (Pl.'s Mot., ECF #66, Ex. A).

Bassi is correct that, as a general matter, an expert may not offer opinion testimony about the credibility of parties or witnesses.  See Halcomb v. Washington Metro. Area Transit Auth., 526 F. Supp. 2d 24, 29 (D.D.C. 2007).  But consistent therewith, it is recognized that it is "within the expertise of a forensic psychiatrist to opine on whether the individual he is evaluating is telling him the truth during his examination."  Kakeh, --- F. Supp. 2d ---, 2008 WL 3925060, at *4.  This seems particularly so here where the defendants will focus on alleged concrete inconsistencies regarding the history provided by plaintiff and how that affected Dr. Siebert's expert opinion on "whether [plaintiff] sustained any psychiatric or psychological condition as a result of the subject occurrence," in contrast to broad generalizations about Bassi's credibility.  See Jarrod Patten's Opp. at 2; see also Casey Patten's Opp. at 1 ("Dr. Siebert should not be barred from discussing inconsistencies in reporting by Plaintiff and the conclusions Dr. Siebert is able to draw from them").  Therefore, Bassi's motion to preclude Dr. Siebert from testifying as to his credibility based on any inconsistencies in his reported medical history will be denied.

**V.      Jarrod Patten's Motion in Limine to Exclude Exhibits and Witnesses**

Jarrod Patten objects to 18 exhibits and three witnesses identified in Bassi's pretrial statement, primarily on grounds of relevance. See Jarrod Patten's Mot. (ECF #67). The Court addresses each of these in turn:

- Exhibit 48, Photograph of Bassi rock climbing: Objection overruled. This exhibit is relevant to whether Bassi has suffered damages by being precluded from engaging in this recreational activity.

- Exhibit 49, Photograph of Bassi on lacrosse field: Objection overruled. This exhibit is relevant to Bassi's claim that he was a serious lacrosse player, which relates to his damages claim.

- Exhibit 53, United Airlines E-Tickets for Washington, D.C.-San Francisco travel in March 2007. Objection overruled. This exhibit is admissible to rebut any claim by defendant that Bassi played in a March 3, 2007 lacrosse game in New York after his injury.

- Exhibit 54, United Airlines E-Tickets for Washington, D.C.-San Francisco travel in March 2006. Objection overruled. This exhibit is offered to show that Bassi's mother traveled to Washington for Bassi's surgery and, hence, to show an item of damages.

- Exhibit 62, Statement of Hannah Freeman: The parties agree that this exhibit will not be offered in evidence.

- Exhibits 66-67, Docket entries in the case of Jarrod Patten v. Edwin Villegas, Case No. 2006 CA 6292 and 2005 CA 9493. Objection overruled in part. The documents may be offered as rebuttal evidence if Jarrod Patten testifies that he has not had prior experience as a party in civil litigation.

- Exhibits 68-69, Jarrod Patten's arrest report and judgment and commitment order: The parties agree that the exhibits will not be offered in evidence consistent with the Order entered on November 14, 2008.

- Exhibits 39-40, Jarrod Patten's 2007 Tax Return: Objection overruled. Evidence concerning a defendant's net worth is relevant to punitive damages. See Jonathan Woodner Co. v. Breeden, 665 A.2d 929, 941 & n.19 (D.C. 1995).

- Exhibits 70-71, Jarrod Patten's 2006 Tax Return: Bassi represents that he will not offer these exhibits in evidence.

- Exhibits 72-76, Jarrod Patten's Citibank IRA Statement, Sentinel Benefits Participant

Summary, 2008 Limited Liability Company Report for Unit 1001 at Bellamare LLC, and Deed for Apartment 1001 at 6001 Island Blvd, Aventuram, Florida. Objection overruled. Like the 2007 tax returns, these exhibits may be submitted to demonstrate Jarrod Patten's current relative net worth and thus establish a factual basis for punitive damages.

- Testimony by Hilary Granat, Bassi's first physical therapist following his March 13, 2007 surgery. Objection overruled. Granat may testify as to her personal knowledge of the extent and nature of the treatment she provided and as to her personal observations of Bassi's pain and suffering.

- Testimony by Officer Marcin Matuszewski: Bassi has represented that he will not call Matuszewski as a witness consistent with the Order entered on November 14, 2008.

- Testimony regarding Bassi's ability to play lacrosse by David Urick, Charles Harold, Scott Urick, and Kevin Giblin: The Court has previously cautioned Bassi not to present cumulative testimony about his high school and college lacrosse career and he has represented that he will not elicit cumulative testimony. Bassi also has represented that he will not call Giblin unless necessary for rebuttal. The Court expects that the testimony on this subject will be further streamlined, but will not, at this time, impose specific limitations on who may testify on this subject.

## **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the motions in limine as follows:

1. Casey Patten's motion in limine to exclude the statement of Hannah Freeman (ECF #68) will be granted as conceded.

2. Bassi's motion to preclude defendants from introducing evidence that he was contributorily negligent or assumed the risk of his injuries (ECF #63) will be granted.

3. Bassi's motion to exclude any testimony by Dr. Gordon opining that some "other mechanism of injury" could have caused his shoulder injury (ECF #64) will be denied.

4. Bassi's motion to preclude defendants from submitting evidence of, or making any mention of, his self-reported symptoms of irritability, aggression, anger, and rage in 2005 (ECF #65) will be denied.

5. Bassi's motion to exclude testimony by Dr. Siebert about Bassi's credibility (ECF #66) will be denied.

6. Jarrod Patten's motion in limine to exclude exhibits and witnesses (ECF #67) will be granted in part and denied in part as enumerated in Section V of this opinion.

A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:   January 8, 2009